## GRAFTON, NOVEMBER TERM, 1826.

~~~

### BRISTOL *vs.* NEW-CHESTER.

An act of the legislature forming a new town, from parts of two existing towns, and providing, that certain portions of the property of the old towns shall belong to the new town, is not repugnant to the constitution of this state, nor to that of the United States.

ASSUMPSIT for money had and received, and for money paid, laid out, and expended.

The cause was tried here at May term, 1825, upon the general issue ; when it appeared in evidence, that the town of *Bristol* was formed from the towns of *New-Chester* and *Bridgewater*, and incorporated the 24th June, 1819. The act of incorporation contains the following clause : " that the " corporate property of the towns of *Bridgewater* and *New-* " *Chester*, which is now situated within the above described " boundaries and territory of *Bristol*, or the avails thereof, " shall belong to said *Bristol*."

Lot No. 37, in the third division, was a school lot, reserved by the original proprietors for the use of the town, containing one hundred and five acres, all of which lies in *New-Chester*, except thirty-seven acres, which is now in *Bristol.* On the 4th day of July, 1791, the town of *New-Chester*, at a meeting duly holden, voted to sell a lease of said lot for 999 years, and authorized a committee to make the sale, who, on the same day, executed a lease of the same lot, for that term, to one *John Smith*, for the consideration of $398 33. It appeared, that after the incorporation of *Bristol*, most of the interest on the above sum, for the year 1820, was paid to *New-Chester*, before the commencement of this suit.

It also appeared, that on the 11th May, 1820, the selectmen of *Bristol* and *New-Chester* agreed upon a committee to ascertain the value of that part of the lot which fell into *Bristol*, who estimated it at $272 67. It did not appear, that the selectmen of either town had any authority from their town to agree upon a committee for this purpose ; and the defendants objected to the evidence on that ground ; but it was admitted.

The town of *New-Chester* had sold, previous to the lease of July 4th, 1791, timber from said lot, for which $91 67 had been received.

It also appeared, that the selectmen of *New-Chester*, by authority from the town, on the 23d April, 1810, leased to *M. Lewis*, for 999 years, a tract of land called the Point lot and Islands, which was drawn to the right of the minister, for $100, which lies in what is now *Bristol*.

A verdict was taken for the plaintiff, for $5, to be altered, or set aside and a verdict entered for the defendants, or judgment to be rendered upon it, according to the opinion of the court, upon the above case.

*E. Webster*, for the town of *Bristol.*—It is not pretended, that the division of the corporate property, contemplated by the clause, in the act incorporating *Bristol*, on which this action is founded, is, in itself, unequal or unjust. When a town is divided into two or more towns, natural justice seems to require, that the burthens, which had previously rested upon all the inhabitants of the old town, and all the property, which they had jointly accumulated for their joint benefit, should be as far as possible divided in due proportions among the corporations, thus formed. And there is no complaint in this case, that there is any want of equality and equity in the division. But the authority of the legislature to make such a division is denied; and it is urged, that this provision is void and inoperative, because made in violation of the constitution.

It is however believed, that the power of the legislature to divide towns, and to form new towns out of one or more old towns, will not be denied. Towns are public corporations, and are under the control of the legislature, which has at all times exercised this power ever since we have had a government. The same power has been exercised in all the New-England states, and is, I apprehend, bottomed on the soundest principles of constitutional law, applicable to this kind of corporations. The legislature of this state has exercised this power, and it may exercise it with or without the consent of the existing corporation. It seems to me, that if the power of the legislature to divide towns, is admitted, their power

to divide the funds also must be admitted. The right to divide, distribute, and apportion corporate property, is necessarily incident to the power to divide the corporators. If the legislature have the power to divide the corporate body, they must have power to divide the corporate funds. It would be very strange, if their power ceased the moment they attempted to do justice. The constitution cannot be so inconsistent as to give to the legislature the power to divide towns, but, at the same time, withhold the power to do it on honest and equitable principles.

When the town of *Bridgewater*, formerly a part of *New-Chester*, was, in 1788, incorporated, one or more lots, belonging to *New-Chester*, fell within the bounds of *Bridgewater ;* and, although there was no special provision, for the purpose, in the act of incorporation, *Bridgewater* went into possession of those lots, and still retains possession, without any claim on the part of *New-Chester*. This acquiescence, on the part of the inhabitants of *New-Chester*, in the possession of those lands by *Bridgewater*, was dictated by a sense of natural justice enforcing the principles of equity between man and man ; and what was thus done, in that case, is made a special provision in the act incorporating *Bristol*.

Possibly, at common law, independently of any special provision in the act, the old town might retain the whole on principles strictly technical. I, however, hold the contrary.

This is not a case, where the legislature attempts to take the property of one man and give it to another. Nor is it the case, where the property of one town is taken and given to another existing corporation. But it is a case, where, upon a division of a town, the legislature secures the property for the use and benefit of those, for whom it was originally granted.

Public lands, belonging to towns, are, in effect, purchases by the inhabitants of the towns. The inhabitants are, in reality, the owners. They have the beneficial interest. They possess and enjoy this interest as long, as they remain inhabitants of the town. The property belongs to the inhabitants, not to that mystical being, the corporation, which is a mere

name, and nothing more—a creation of the law, unsubstantial and intangible—a kind of metaphysical entity.

The proprietors of *New-Chester* granted this lot for schooling—for schooling whom?—a mere corporation without soul? or the inhabitants living within the limits of the township? It was a grant for the benefit of the inhabitants of the territory composing, at that time, *New-Chester*. It has now, for the benefit of the inhabitants of that territory, been apportioned among them, by the legislature, on just and equitable principles. The property has been divided among those, who, by law, had the beneficial interest. The act takes away no right from *New-Chester*; it gives no new rights to *Bristol*. It is only declaratory of their respective rights.

When the act was passed, the inhabitants of *New-Chester*, now set off to *Bristol*, were, in reality, owners, in their due proportion, of this public lot, or the avails of it. They assumed a new name, and the rest of the inhabitants retained the old one. This mere change of names cannot, in equity, affect their rights. It would be attributing, I think, a little too much to the power of a name.

In dividing towns the legislature may settle the terms and conditions, on which that division shall be made. It may enlarge or diminish their territorial limits—may extend or abridge their privileges, and may impose new liabilities and duties. In providing for the support of paupers, upon the division of towns, the rights of the inhabitants are as much affected, as they are, when the funds are divided. Existing privileges, with respect to the support of paupers, may be limited; and new duties and liabilities are frequently imposed by the act of incorporation. The settlement of paupers upon a division of towns is regulated by a general statute, which is believed never to have been thought, by any person, unconstitutional. And special provisions, on this subject, in acts of incorporation, framed to meet special cases, and materially different from the general statute, and affecting very considerably the rights, interests, duties, and liabilities of towns, have never been supposed to be repugnant to the constitution; although many questions have been raised under them.

In the case of *Windham vs. Portland*, (4 *Mass. Rep.* 384,) *Parsons, C. J.* speaking of a division of towns, says, " if a " part of its territory and inhabitants are separated from it, " by annexation to another, or by the erection of a new corpo- " ration, the former corporation still retains all its property, " powers, rights, and privileges ; and remains subject to all " its obligations and duties ; unless some new provision should " be made by the act authorizing the separation. But as " this separation must be made by the legislature, the act " authorizing it may impose conditions and limitations."— The doctrine, for which we contend, is recognized in the case of *Harrison vs. Bridgton*, (16 *Mass. Rep.* 16,) and in *Hampshire vs. Franklin*, (16 *Mass. Rep.* 76.)

The clause in the act, on which this action is founded, is a matter of proper legislation. It violates no provision of the constitution, no principle of common right, and no fundamental principle of government.

*Nesmith*, for *New-Chester*.—It is not denied in this case, that *New-Chester*, as a public corporation, had a perfect right to the enjoyment of all the land granted to it by its charter, up to the time, when *Bristol* was incorporated. *Baptist Society in Wilton vs. Wilton*, (2 *N. H. Rep.* 508.) And that right must remain in *New-Chester*, until it is legally transferred. 2 *N. H. Rep.* 20. But the act incorporating *Bristol* declared, that a certain part of the corporate property, which had, up to that time, belonged to *New-Chester*, should belong to *Bristol* ; and the question in this case is, whether it was within the constitutional competency of the legislature thus to trans- fer the right of property from one corporation to another ?

We believe it to be well settled, that the right of a corpo- ration to its goods and estate is as perfect, as that of an indi- vidual. Corporations and individuals hold their estates by the same laws. The territorial limits of a town may be curtailed by an act of the legislature—but it has never yet been decided, that the legislature can disfranchise a town, and give its property to another corporation.

The separation of a part of the territory and inhabitants from *New-Chester* could no more affect the right of that town to hold its property, than if those inhabitants had removed to

other towns. The individuals as such had no estate in corporate property. They had no interest in it, except as inhabitants ; and when they ceased to be inhabitants, they ceased to have any interest whatever. The mode, in which they ceased to be inhabitants, could make no difference.

There is another circumstance in this case, that deserves attention. A part of the territory and inhabitants of *Bridgewater* was included, by the act of incorporation, in *Bristol ;* and if this property can be taken from *New-Chester* and given to *Bristol,* it goes to the use of those inhabitants as well as the rest.

We hold, that the clause in the act of incorporation of *Bristol,* on which this action is founded, is a law impairing the obligations of a contract, within the meaning of the constitution of the United States. We also hold, that it is a retrospective law, within the intent of the twenty-third article of our bill of rights.

The supreme court of the United States, (6 *Cranch* 87,) held, that a grant differed in nothing from a contract executed. A grant, says *Marshall, C. J.,* in its own nature, amounts to an extinguishment of the rights of the grantor, and implies a contract not to re-assert that right. *Justice Story* adopts this reasoning in the case of *Dartmouth College vs. Woodward,* and observes, that this language was used in reference to a grant of land by the governor of a state, under a legislative act. " It determines," says he, " in the most unequivocal " manner, that the grant of a state is a contract, within the " clause of the constitution of the United States, before by " us referred to, prohibiting the states from passing any law " impairing the obligation of a contract ; and it implies a " contract not to re-assert the right granted." He therefore concludes, that the doctrine applies to a charter, or grant, by the king. If then the doctrine applies to a grant by a governor, under a statute of a state, and to a grant from the king, it is difficult to see, why it does not apply to a grant by the *Masonian* proprietors to the inhabitants of *New-Chester.* If the decisions of the supreme court of the United States, which we have just cited, are sound law, we think, that the

clause in the act incorporating *Bristol*, which we are now examining, must be pronounced repugnant to the constitution of the United States.

But we shall cite one more authority, which we trust will be conclusive in this case. It is that of *Terrett vs. Taylor*, (9 *Cranch* 52.) That was a case, where the legislature of Virginia asserted a right to all the property of the episcopal churches, in the respective counties in the state, and authorized the overseers of the poor in each parish, wherein any glebe land was vacant, or should become so, to sell the same and appropriate the proceeds to the use of the poor of the parish. The supreme court of the United States decided, that this act was void. The court say, " in respect also to " public corporations, which exist only for public purposes, " such as counties, towns, cities, &c. the legislature may, " under proper limitations, have a right to change, modify, " enlarge, or restrain them, *securing, however, the property for* " *the use of those, for whom, and at whose expence, it was orig-* " *inally purchased.*" This is all we ask in this case. We only ask to have the property, that was originally purchased for the use of the ministry, and for the support of schools, in *New Chester*, secured to that corporation. It was granted for their benefit, and their benefit alone.

RICHARDSON, C. J.  This action is founded upon a clause in the act incorporating the town of *Bristol*; and the only question, which it presents for our decision, is, whether that clause in the act is repugnant to the constitution of this state, or of the United States. On the part of *New-Chester*, it is urged, that this clause is repugnant to that part of the constitution of the United States, which declares, " that no state " shall pass any law impairing the obligation of contracts." We are not aware, that there are more than two ways, in which it can be supposed, that the clause in that act, which we are now examining, conflicts with that provision in the constitution of the United States. The property of *New-Chester*, which this clause declares shall belong to *Bristol*, consisted of lots or parts of lots, which had been, originally, reserved in the grant of the township of *New-Chester*, for the use of schools and the minister. And it may be, and in fact

is, urged in this case, that the reservation of those lots for those purposes was a contract, the obligation of which this clause in the act, has a tendency to impair. We have no doubt, that such reservations are contracts, the validity of which cannot be impaired by an act of the legislature ; and we think, that the only enquiry on this point is, whether the clause in question does attempt to impair the obligation of the contract, contained in those reservations.

Lands may be reserved to towns, for particular purposes, with an understanding between the parties to the reservation, that the title shall be retained by the towns forever, and the rents and profits only be applied to the intended purposes.— And we are of opinion, that such an understanding would constitute a contract, the obligations of which could not be impaired by an act of the legislature.

On the other hand, such reservations might be intended and understood by all parties, as absolute and unlimited gifts to the inhabitants of towns, to aid them, in their infant days, in procuring education for their children, and religious instruction for all, without any understanding or contract, either express or implied, that the towns should forever hold the lands for those particular purposes. And, in that case, reservations of this kind would stand upon the same ground, as all other property belonging to towns.

In the case of the *Baptist Society vs. Wilton,* (2 *N. H. Rep.* 508,) we had occasion to advert to the nature of these reservations, and were of opinion, that they were intended merely to aid the first settlers of towns, and were not intended to be kept perpetually for the purposes mentioned in the reservations. And we stated, in that case, the reasons, on which the opinion is founded, and which it is unnecessary to repeat at this time. We still remain of the same opinion.— It is then very obvious, that the clause, we are now considering, does not impair the obligation of any contract, in the reservation. The reservation was an executed contract passing the title of the land from the *Masonian* proprietors to the town of *New-Chester ;* and there is nothing in this clause in any way affecting that contract. Indeed this clause in the act can have no operation, unless the reservation remains in

full force, as a conveyance passing the title of the lands.—
For it is *the property* of *New-Chester*, which the act declares
shall belong to *Bristol*.

Another way, in which this clause in the act may be im-
agined to conflict with that part of the constitution of the
United States, is, that the act incorporating *New-Chester* is a
contract, the obligation of which is impaired.   But it may be
conceded, that the act, incorporating that town, is a contract,
the obligation of which cannot be impaired by an act of the
legislature ; yet still it will remain to be shewn, that the ob-
ligation of the contract has, in this instance, been impaired.
Towns are public corporations, created for purposes purely
public, empowered to hold property, and invested with many
powers and faculties, to enable them to answer the purposes
of their creation.   In the creation of such corporations, there
must, in the nature of things, be reserved, by necessary im-
plication, a power to modify them in such manner, as to meet
the public exigencies.   There would be great absurdity in
the supposition, that corporations, created by the legislature
for purposes purely public, could not be modified and altered
from time to time, as the public convenience or necessity
might require.

A power to alter and change such a corporation and adapt
it to the purposes, it was intended to accomplish, is implied
in its very nature.

It has been the constant usage, in all the New-England
states, to enlarge or curtail the power of towns, and to divide
their territory and make new towns, whenever the conven-
ience of the public required it ;  and no doubt is believed
ever to have been entertained of the power of the legisla-
tures to do this.   And it seems to us, that a power to divide
the property of a municipal corporation, is necessarily inci-
dent to a power to divide the territory of such a corporation,
and thus form two corporations.   Every principle of natural
justice might be violated, by the division of a town into two
towns, without a division of the corporate property     We
are not, therefore, able to see any thing in the act incorpora-
ting *Bristol*, which tends to impair the obligation of any con-
tract in the charter of *New-Chester*.

But it is said, that this clause attempts to take the property of *New Chester*, and give it, in effect, to inhabitants of another town.   It is true, that a part of *Bridgewater* was included in the town of *Bristol*, and that the property, in dispute in this case, will go to the benefit of the inhabitants of that part with the rest, if this clause in the act is binding.—And it may be conceded, that in the incorporation of a town, there is no implied power reserved to take its property arbitrarily and give it to another town.   Corporations, both public and private, may be conceded to stand, in this respect, on the same ground with individuals.   But how is this case ? A part of *New-Chester* and a part of *Bridgewater* were taken to make the new town of *Bristol* ; and it was declared by the act, incorporating the latter town, that portions of the corporate property of the old towns, should belong to the new. The complaint of *New-Chester* is, that a part of its property is to be taken for the benefit of a part of the inhabitants of *Bridgewater*   But it ought to be a decisive answer to this complaint, that all this is compensated by a part of the property of *Bridgewater*, taken at the same time, for the benefit of the former inhabitants of *New-Chester*, who are now included in *Bristol*.   Two towns have been divided into three, and the corporate property of the two divided between the three. There is no complaint, that the division was in itself unequal. Natural justice required, that there should be an equitable division.   Surely the circumstance, that the property of one town has been taken and gone to the benefit of the inhabitants of another, in the manner above stated, which was a necessary and unavoidable consequence of the exercise of the power of the legislature to make a new town from two or more old towns, cannot change the nature of the transaction.   If it be fit and proper, and within the competency of the legislature, to divide the corporate property of a town, when its territory is divided into two towns, it is imagined, that it will be extremely difficult to conceive, why it is not fit and proper, and within the competency of the legislature, to divide the corporate property of two towns, when they are divided into three.

But it is said, that this clause, in the act incorporating *Bristol*, is a retrospective law, and contrary to the twenty-third article in our bill of rights, which declares, that " all " retrospective laws are highly injurious, oppressive, and " unjust. No such laws therefore should be made, either " for the trial of civil causes, or the punishment of offences." The question is, can this clause be considered as a retrospective law, for the trial of a civil cause? A retrospective law, for the decision of a civil cause, is a law prescribing the rules, by which an existing cause shall be decided, upon facts existing previous to the making of the law. It is, in its nature, a judicial decision of an existing cause of action.

But the clause in the act, which we are now considering, prescribes no rule for the decision of an existing cause of action. The cause of action, in this case, had no existence previously to the passing of that act.

The power to divide towns is strictly legislative ; and the power to prescribe the rule, by which a division of the property of the old town shall be divided, is incident to the power to divide the territory, and is, in its nature. purely legislative. No general rule can be prescribed, by which an equal and just division, in such cases, can be made Such a division must be founded upon the circumstances of each particular case. This clause prescribed no rule to operate retrospectively upon an existing cause of action, but simply declared, how the property should be divided among those, by whose exertions, and for whose benefit, it had been acquired.

When an act of the legislature grants a right to make a turnpike over the lands of individuals, a new right to the easement is created in the grantees, and the rights of the owners of the lands are abridged. But such a law has never been supposed to be retrospective, within the meaning of this clause in our bill of rights. And in this case the objection seems in reality to be, not that the act is retrospective, but that it takes property from one corporation, and gives it to another. But the power of the legislature to take the property of individuals for public purposes, is indisputable. It is a power limited, undoubtedly, in its nature by the public

exigencies ; but it is a power recognized by the constitution. There is no doubt, that when this power is exercised, a just compensation is to be made. The constitutions of some of the states expressly declare, that such compensation shall be made. And natural justice speaks on this point, where our constitution is silent. We admit, that the legislature cannot arbitrarily take the property of one town, and give it to another. But that is not this case. Here the property had been acquired as much for the benefit of the inhabitants of *New-Chester*, who were included in *Bristol*, as of the residue. And instead of taking arbitrarily the property of one town and giving it to another, the act provides for a just and equitable division of the property among those, for whose benefit it had been accumulated. Such is the real nature of the case, stripped of the forms of law, with which it has been enveloped. And we are of opinion, that the clause in the act incorporating *Bristol*, on which this action is founded, is not repugnant to any provision in the constitution of this state, or of the United States, and that there must be

<div align="right">*Judgment on the verdict.*</div>