## BELL *v.* TWILIGHT.

A mere release or quitclaim deed of land, will not estop the grantor or releaser from setting up a title subsequently acquired against his grantee or releasee.

So, also, a covenant, in a quitclaim deed in common form, " to warrant and defend the said granted premises against all claims or demands of all persons claiming by, from or under me," will not estop the grantor from setting up in himself a title, subsequently acquired, against the grantee, provided such title be not one derived from or under the grantor.

WRIT OF ENTRY. It appeared that Ebenezer Fitts was formerly owner of the demanded premises.

The demandant introduced in evidence a life lease from said Fitts to Daniel Fitts and Hannah Fitts, and the survivor of them, dated July 19th, 1824, and recorded April 25th, 1836, and a deed from Hannah Fitts to the plaintiff, dated October 2, 1844, which was after the decease of her husband.

The tenant put in evidence, a deed to himself from the plaintiff, dated on the twenty-ninth day of April, 1837, a mortgage from Ebenezer Fitts to the plaintiff, dated on the twenty-ninth day of March, 1834, and recorded the same day, and an assignment of said mortgage, dated on the twenty-ninth day of April, 1837. The plaintiff then proposed to prove—1st, that he took the mortgage with notice of the lease; 2d, that the book account mentioned in the assignment had been paid by Ebenezer Fitts, to the defendant; 3d, that the defence was made for the benefit of Ebenezer Fitts, and that he is the party really interested in sustaining it; but the court ruled that these facts, if proved, would not enable the plaintiff to maintain the suit.

The said deed of Bell to Twilight was a quitclaim deed in common form, containing a covenant " to warrant and defend the said granted premises against all claims or demands of all persons claiming by, from or under me."

Before the mortgage and assignment were offered in evidence, the defendant's counsel contended that Bell was estopped by his covenants, and could not be permitted to en-

force the title under the lease, but the court ruled that the covenants, construed in connection with the rest of the deed, and with reference to the nature of the conveyance, would not estop Bell from asserting a title which he acquired subsequently to the execution of his quitclaim deed, and to this ruling the defendant excepted. Afterwards, however, upon an examination of *Kimball* v. *Blaisdell*, 5 N. H. Rep. 533, the court felt bound by its authority, and could not distinguish the present case in principle from that, and a verdict was taken for the defendant, subject to the opinion of this court.

*James Bell*, with whom was *Christie*, for the demandant.

1. The case differs in nearly all the material facts from that of *Kimball* v. *Blaisdell*, 5 N. H. Rep. 533, and the decision in that case is therefore inapplicable. *Comstock* v. *Smith*, 13 Pick. 116; *Flagg* v. *Mann*, 14 Pick. 482; Co. Litt. § 446; *Blanchard* v. *Brooks*, 12 Pick. 65–7; 19 Pick. 341; *Ham* v. *Ham*, 2 Shepl. Rep. 351; *Jackson* v. *Wright*, 14 Johns. Rep. 193.

2. The quitclaim deed and assignment of the mortgage from the plaintiff to the defendant, are to be regarded as one conveyance, and their effect has been decided to be simply that of an assignment of the mortgage. See opinion of *Perley*, J., in the previous report of this case, 2 Foster's Rep. 517. There can therefore be no estoppel, as the whole truth appears upon the face of the conveyance. *Eroade* v. *Ingraham*, 13 Pick. 35; *Sinclair* v. *Jackson*, 8 Cow. Rep. 543; Co. Litt. 325, b.

3. If, as the plaintiff was prepared to prove, Fitts, who had the right of redemption, redeemed the mortgage, the defendant's title as assignee of the mortgage was extinguished, and he cannot set it up by way of estoppel or otherwise, against the plaintiff.

4. There can be no estoppel in such a case where any thing passed by the deed containing the covenants, and *a*

*fortiori,* there can be none where everything passed that was intended or attempted to be conveyed. *Jackson* v. *Hoffman,* 9 Cow. Rep. 271.

In addition to the foregoing cases, the demandant referred the court to 14 N. H. Rep. 226; 14 N. H. Rep. 111; and 12 Pick. 47.

*Emery* and *Marston,* for the defendant.

The deed of Bell to Twilight, dated April 29, 1837, containing a covenant of warranty against all persons claiming by, from or under him, estops him from setting up an after acquired title against his grantee. It is a perpetually operating covenant, and runs with the land. Co. Litt. 265; 4 Kent Com. 98.

A warranty against any special persons extends to them in all cases, and to all titles and entries upon title. Sheppard's Touchstone 197.

Such a covenant refers to the land, and not to the right of the grantor merely. And it operates as an estoppel by way of rebutter, to prevent circuity of action. *Fairbanks* v. *Williamson,* 7 Greenl. 96; *Kimball* v. *Blaisdell,* 5 N. H. Rep. 533; *Loomis* v. *Bedel,* 11 N. H. Rep. 74; *Wark* v. *Willard,* 13 N. H. Rep. 389; *Brown* v. *Manter,* 1 Foster's Rep. 528.

Bell's mortgage title was perfect, and the mortgage authorised him to sell and give an absolute title to the premises, and that power he undertook to execute, and he cannot now set up a title in opposition to a title which he then undertook to convey. *Jackson* v. *Hinman,* 10 Johns. 292.

Woods, J. Hannah Fitts is shown to have had a life estate in the premises at the date of her deed to the plaintiff, namely, October 2d, 1844. Bell then became seized of that estate in the land in virtue of her deed. That title or estate was derived from Ebenezer Fitts, July 19th, 1824, who was the owner of the fee at that date. Bell, then, is well enti-

tled to recover the possession of the land in this action, unless, from the other facts in the case, he is estopped from showing his title and relying upon it. Prior to the date of said deed of Hannah Fitts to Bell, said Ebenezer Fitts executed to Bell a mortgage deed of the premises, bearing date March 29th, 1834, to secure to him a certain note, and also his book account against said Fitts. This gave to Bell, who is shown to have known of the existence of said life estate at the time, a mortgage interest in the reversion of the estate, after the determination of the life estate.

On the twenty-ninth day of April, 1837, Bell, still retaining his mortgage interest to the extent of the value or amount of said book account, the same not being paid, assigned and transferred to the defendant, his heirs, &c., " his book account against Ebenezer Fitts, within mentioned, and the within mortgage, and the within described land," &c. On the same day, Bell made and executed to the defendant, for a consideration therein expressed of $110, his deed, in which he "released, sold, and quitclaimed," &c., " unto the said Twilight, and his heirs," &c., " all his right, title, interest, estate and demand of, in, and unto the home farm," &c., the premises in question, " to have and to hold said released and quitclaimed premises to him, said Twilight, his heirs and assigns," &c., " engaging hereby to warrant and defend the said granted premises against all persons claiming from, by or under me." The aforesaid assignment and quitclaim deed, according to the decision in this case at December term, 1851, (2 Foster's Rep. 517,) being parts of the same transaction, amounted together to no more than a mere assignment and conveyance of Bell's mortgage interest in the premises to Twilight. At the time, Bell had no other interest in the premises, and the conveyance is in the most explicit manner limited in its language and legal operation to " the right, title, interest, estate and demand " of Bell in the farm in question. The intention of Bell to convey only his mortgage interest in the land is

plain and obvious, and the deed, as a conveyance, can operate no farther. The interest, then, conveyed by Bell, is entirely distinct from that which he now claims. He now, upon the proof of title offered, claims a life estate in the premises during the life of Hannah Fitts. His mortgage interest was only a right in the remainder or reversion after the determination of the life estate. The existence of the life estate is perfectly consistent with that of the mortgage interest. They are in no way in conflict with each other. The right to the enjoyment of the one is present, and that of the other is future, upon the determination of the first.

But it is contended on the part of the defendant that, by reason of the conveyance of Bell to Twilight, of the twenty-ninth of April, 1837, and the covenant contained in his deed of that date, Bell is estopped from setting up the title to the life estate purchased of Hannah Fitts, since the date of his deed to Twilight.

In the first place, we will examine the question whether the covenant in the deed be of a character to have the effect claimed for it by the defendant. That it is a perpetually operating covenant, and runs with the land or title or interest conveyed, there can be no doubt.

But the great question is whether it be inconsistent with the claim to the estate derived from Hannah Fitts, and now set up by Bell.

Bell covenanted " to warrant and defend the said granted premises against all claims or demands of any person claiming by, from, or under" him. Now if the claim be inconsistent with the covenant above recited, Bell cannot, according to a well settled principle of law, be allowed to set it up, and rely upon it in maintenance of this action. A grantor, in a deed with general warranty, will not be allowed to set up a paramount or elder and better title, subsequently acquired, to the premises conveyed, against the right of his grantee. In such a case any title which he may subsequently acquire will enure to the benefit of his grantee, and

the general warranty will operate as an estoppel for avoiding circuity of action. *Wark* v. *Willard*, 13 N. H. Rep. 389; *Kimball* v. *Blaisdell*, 3 N. H. Rep. 533, and cases there cited.

But it is equally well settled that where one conveys land by a mere release, or quitclaim deed, that a title subsequently acquired, will not enure to the benefit of the grantee.

In Coke Litt. §§ 346, 265, b. it is laid down that no right passeth by the release, but the right which the releasor hath at the time of the release made, as if the son release to the son of the diseizor of his father all the right which he hath, or may have, without clause of warranty. After the death of his father, the son may enter, against his own release, because he had no right at all at the time of the release made, the right being at that time in the father.

In *Mc Cracken* v. *Wright*, 14 Johns. 194, a similar doctrine is recognized. In that case Peter Boise, on the fifth of July, 1794, by deed poll, granted, bargained, sold and quitclaimed to the plaintiff a tract of land described as being the same " granted to him as bounty lands for his services, &c., during the late war." But no act had then been passed granting any lands to Boise, but the same was afterwards passed by the legislature of New York, April 2d, 1806. *Spencer*, J., remarked : " The deed from Boise to McCracken is a bargain and sale, and quitclaim, and he had then no title to convey in the premises, and no title, not then *in esse*, would pass, unless there was a warranty in the deed, in which last case, it would operate an estoppel for avoiding circuity of action."

*Weidham* v. *Hubble*, 1 Cow. 613, decides that where one in possession of land without title, conveys it by quitclaim deed, the conveyance will pass a possessory title, and nothing more, and that in such a case, a title acquired afterwards will not pass to the grantee, or enure to his benefit.

And Mr. Chief Justice *Richardson*, in *Kimball* v. *Blaisdell*, 5· N. H. Rep. 535, states the doctrine in the following

terms : " But it is otherwise when one conveys by a mere release, land to which he has no title. In that case a title subsequently acquired by him will not enure to the benefit of him to whom he released."

Now it is entirely clear, we think, that by a mere re-lease, without any covenant of all the right, title and inter-est of a person having no title at the time, he will not be estopped from setting up any paramount title which he may afterwards acquire. But in the case under consideration, the deed of quitclaim contained a covenant of the plaintiff, engaging to warrant and defend the said granted premises against all claims or demands of any persons claiming by, from or under " him.

The question is whether notwithstanding that covenant the plaintiff may be allowed to set up the title acquired by him from Hannah Fitts. Is Bell estopped by that covenant to deny that at the date of his deed he was, or to show that he was not the owner of the life estate of Hannah Fitts, which he now claims, and which he now offers to show that she then owned ? The principle upon which estoppels rest is that when a man has by his deed averred or affirmed or covenanted, or by his act *in pais* admitted that a fact is true, he shall not afterwards be permitted to deny, or contradict, or disprove it. The facts thus affirmed or admitted, cannot be disproved. They are conclusively admitted. *Flagg* v. *Mann*, 14 Pick. 467.

Bell's covenant in this case is a limited covenant. It is limited to any title derived and claimed by, from or under him. The covenant, then, is only against his own convey-ances, or any title derived from or under him. There is no pretence that the title which Bell derived from Hannah Fitts, and which he seeks to establish by the present action, is a title derived by, from or under Bell, nor that Bell had any such claim or interest in the farm until after his deed of quitclaim and assignment to Twilight, which he could con-vey. Bell then never engaged to warrant and defend against

the title now set up by him. He never affirmed by the covenant in his deed that there was no such title outstanding in Hannah Fitts at the time. Hannah Fitts, at the date of Bell's deed, undoubtedly held the title now set up, and could have enforced it against Bell or his grantee. And it is obvious that if Hannah Fitts had brought an action against Twilight, after Bell's deed, and before she conveyed her interest, she must have prevailed in the action. And it is equally plain that Twilight could not have maintained any action upon the covenant in Bell's deed, if the title of Hannah Fitts had prevailed, and Twilight had been dispossessed of the land. And the reason why no action would lie in such case would be that Bell had not covenanted against any claim of the character of that to which Hannah Fitts was entitled.

There can be no fair pretence, then, that Bell's covenant in his deed is inconsistent with the title that he proposed to set up in the present case. He did not offer to disprove any fact solemnly affirmed by him in the deed. Neither did he propose to establish any right or title in the land against the existence of which he had covenanted.

Most certainly, then, Bell's covenant created no estoppel against the claim of Bell to set up the title of Hannah Fitts in his hands. Bell's claim is in violation of no rule of law, and no principle upon which the doctrine of estoppel rests. By his deed he averred that there was no outstanding title derived by, from or under himself; but not that Hannah Fitts, or any one else, had no paramount title, derived from some other source of title. From the facts stated in the case, it seems to have been supposed by the judge who tried the cause, that this case came directly within the decision in *Kimball* v. *Blaisdell*, 5 N. H. Rep. 533. But it is obvious that the facts in that case were not adverted to, or the opinion of the learned judge would have been in conformity with the views of this court already expressed. The point was ruled against his strong convictions of the true rule of

law, and he was brought to the result at which he arrived only by force of the reported decision in *Kimball* v. *Blaisdell.*

The covenant of Brown, in that case, in his deed to Kimball, was similar to the covenant of Bell, in the present case. It was a limited covenant. It was against his own conveyances only. But Brown had, prior to his deed to Kimball, conveyed to one Burleigh, and at the date of that deed was the admitted owner of the premises conveyed. And the title thus conveyed to Burleigh, at the date of Brown's deed to Kimball, Burleigh afterwards conveyed to Brown. It was decided that Brown was estopped, by the covenant in his deed, to set up the title thus acquired from Burleigh against Kimball, and that Blaisdell, who had levied the premises as the estate of Brown, by virtue of an execution against him, being thereby privy in estate with Brown, was estopped also to set up the title acquired by the levy against Kimball. But that case differs *in toto cœlo* from the present. Brown's covenant in that case was entirely inconsistent with the claim of title set up by Blaisdell. He had covenanted against all claims derived from himself prior to his deed to Kimball. That was the effect of his covenant. Yet Blaisdell offered to show, as an answer to Kimball's action, that he was the owner of the land by a title which Brown had conveyed to Burleigh by his deed, and which was outstanding at the date of his deed to Kimball, but which was afterwards by Burleigh reconveyed to Brown. The proposition was to show and rely upon a title which Brown had admitted, and affirmed, and covenanted by his deed did not exist. And it is plain, according to the principles of the well established doctrine of estoppel, that the decision was correct. The judge there says, " But we are of the opinion that this warranty, under the circumstances, has the same effect to create an estoppel as it would have had, had it been a general warranty, and that if this suit had been against Brown, he would have been estopped to

set up any title under the conveyance made by Burleigh to him." It is obvious, therefore, that the estoppel in that case depended wholly upon the fact that the title set up by Blaisdell was a title against the existence of which Brown had distinctly covenanted, while in the present case the covenant of Bell does not embrace the title which he proposed to show and rely upon. We regard the opinion in *Kimball* v. *Blaisdell,* as having legitimately no controling influence in the decision of this cause.

It is insisted further, in this case, that if Bell was not estopped by his covenant, yet that he was estopped by his conveyance, such as it was, from averring that he had no title in the land at the date of his conveyance, and that nothing passed in virtue of it.

This rule of law would seem to be laid down in various authorities as being a well established principle of the common law. Coke Litt. 45, 47; *Ischam* v. *Morrill,* Croke Car. 110; *Jackson* v. *Ball,* 1 Johns. Ca. 91 ; *Jackson* v. *Murray,* 12 Johns. 201.

The same principle is distinctly recognized as being well established in *Comstock* v. *Smith,* 13 Pick. 116. But the present case does not fall within the operation of the rule. It cannot therefore be affected by it. It is conceded that by the quitclaim deed, and the assignment of Bell to Twilight, the mortgage title of Bell, in the reversion, passed to Twilight. And the rule of law referred to is not violated by allowing Bell to show that nothing beyond the mortgage title passed to Twilight, but is fully satisfied by showing that something passed, namely, the mortgage title, and no such estoppel is created as was claimed at the argument. *Blanchard* v. *Brooks,* 12 Pick. 67 ; *Comstock* v. *Smith,* before cited.

If the doctrine of estoppel went as far as was claimed, a party owning a partial title in an estate could not, by a quitclaim deed, drawn in the most guarded and specific terms, convey that interest, without at the same time estopping

himself forever from purchasing the residue of the estate, and setting it up against his grantee. Upon what principle of reason, or of law, such a doctrine would be found to rest, is not very obvious. But it is sufficient that it would be very far from the intention of the parties to such a conveyance that it should have any such effect, and would be in direct contravention of every principle of right and justice. It seems to have been decided in many cases that where the deed of conveyance is of all the right, title and interest of the grantor in the land described, with covenants of ownership, general warranty, good right to sell and convey, &c., the deed in such case only conveys such right in the land as the grantor had at the date of the deed, and that the covenants in the deed are to be regarded as having reference to, and as being qualified and limited by the grant.

In *Allen* v. *Holton*, 20 Pick. 464, the court say, " The grantor conveys his own title only, and all the subsequent covenants have reference to the grant, and are qualified and limited by it. That this was the intention of the parties cannot, we think, be reasonably doubted, and the words of the covenant are to be so construed as to effectuate that intention."

In *Blanchard* v. *Brooks*, 12 Pick. 67, *Shaw*, C. J., says, "And the same considerations apply substantially to the estoppel to be created by the warranty of John Soley, by which the petitioner, as privy in estate with him, is alleged to be bound. The grant in the deed is of all his right, title, and interest in the land, and not of the land itself, or any particular estate in the land. The warranty is of the premises, that is, of the estate granted, which was all his right, title and interest. It was equivalent to a warranty of the estate he then held, or was seized of, and must be confined to the estate vested. The grant, in legal effect, operated only to pass the vested interest, and not the contingent interest, and the warranty being co-extensive with the grant,

did not extend to the contingent interest, and of course did not operate upon it by way of estoppel."

So in *Sweet* v. *Brown,* 12 Met. 177, Mr. Justice *Dewey* remarks, " The warranty must be taken in a limited sense. It must be restricted to his title and interest. The covenant here attaches to the estate and interest conveyed, and is not a general covenant of warranty of the whole parcel, particularly described by metes and bounds. Such construction will reconcile all parts of the deed, and give effect to each."

It is well settled that where there are general words alone in a deed of release, they shall be taken most strongly against the releasor, but where there is a particular recital, and then general words follow, the general words shall be qualified by the particular recital. 5 Bac. Ab. tit. Rel. (K.) 710 ; *Jackson* v. *Stackhouse,* 1 Cow. 126.

Mr. Justice *Sutherland,* in *Jackson* v. *Hoffman,* 9 Cow. 273, says, " And although the deed also contains a personal covenant of seizin, for quiet enjoyment, and a covenant of general warranty, yet those covenants cannot, I think, be fairly construed as relating to, or embracing the Ellison mortgage, which in a previous part of the deed had been recited as a subsisting incumbrance upon the premises conveyed. Those covenants may have their full operation and effect by being considered as applicable to all other incumbrances, except the mortgage ; and it is a general rule that where there is anything for the warranty to operate upon, the doctrine of estoppel will not apply."

If in this State, as in Massachusetts and New York, the covenants in a deed were limited and restricted to the estate and right granted, it would not admit of any doubt, that upon that ground no estoppel would be created by Bell's covenant in the deed of conveyance to Twilight. In that view, the covenant would extend only to the right conveyed, namely, the mortgage interest. But the doctrine of *Loomis* v. *Bedel,* 11 N. H. Rep. 74, would seem to be somewhat in conflict with that of the numerous decisions in Mas-

sachusetts and New York, as to the limitation of the covenants in the deed to the estate conveyed, and since this case does not call for it, we here give no opinion upon that question.

We have looked into the case of *Comstock* v. *Smith*, 13 Pick. 117, cited by counsel at the bar, and before referred to, and we see no reason to doubt the correctness of that decision, and regard it as being precisely in point, and in accordance with the views already expressed, and as fully sustaining the decision of the case under consideration. It is there decided that a covenant in a deed of land, that the grantor will warrant the land against all persons claiming under him, will not estop him from setting up a title subsequently acquired by him by purchase. It is there said " the tenant's covenant is a restricted covenant." " He did not undertake to convey to the demandant an indefeasible title, but only his own title, nor did he agree to warrant and defend it against all claims and demands, but only those derived from himself, by which he must be understood to refer to existing claims and incumbrances, and not to any title which he might afterwards acquire, by purchase or other-otherwise, from a stranger. There is therefore no reason to be assigned why the tenant should not purchase the title of Waters. The demandants cannot thereby be prejudiced, nor ought they therefrom to derive any benefit."

So in the present case, the covenant was a limited covenant. Bell covenanted, at most, only against any title derived from himself prior to his grant, and existing at the time. No action could be maintained against Bell upon his covenant, except upon showing the existence of a prior conveyance of the premises from Bell. This we think is entirely clear. If Hannah Fitts had recovered the possession of the land against Twilight, he could have maintained no action upon the covenant against Bell. Bell's covenant was not broad enough to reach that case. He did not covenant against any title of Hannah Fitts derived from Ebenezer

Fitts, but only against any such title as might have been previously derived from himself. The title of Hannah Fitts was perfect *as against* Twilight. She could have conveyed it to any one else as well as to Bell. Bell had not covenanted in his deed against the existence of that title, but his covenant was entirely consistent with it. To show that the title now set up by Bell was a title existing in Hannah Fitts at the date of Bell's deed, is in no sense to contradict any fact affirmed in the deed. An ouster by virtue of Hannah Fitts' title would not, as we have seen, have given any right of action against Bell upon the covenant in his deed. The covenant in this case, then, created neither a technical estoppel, nor an estoppel by way of rebutter to prevent circuity of action. Bell, in setting up the title claimed, neither attempts to contradict any averment or recital in the deed, nor to establish any title against which he had covenanted, or which, if shown to exist and enforced against Twilight, would give him any right of action against Bell. *Miller* v. *Erving*, 6 Cush. 34, is an authority also directly in point—sustaining the general views expressed in this opinion.

We are therefore of the opinion that the ruling of the court below was erroneous, and that the verdict must be set aside, and

*A new trial granted.*