## JEWELL v. PORTER & ROLFE.

A voluntary conveyance is good against an heir-at-law, and against all but creditors and purchasers without notice.

A conveyance of real estate may be made by the husband to the wife, through the intervention of a third person; and the deeds, when recorded, will be good against all but creditors.

B. being seized in fee of real estate, conveyed the same, by warranty deed, to T., who, on the same day, conveyed the premises to the wife of B., by quitclaim deed, and the deeds were recorded—*held*, that the conveyances were good against all but creditors, and that the estate passed to the wife.

The rights which a grantor of land, by deed, with full covenants, may acquire, subsequent to his conveyance, will enure to the benefit of his grantee.

PETITION, for partition of certain real estate situate in Deerfield, in the county of Rockingham, entered at the superior court of judicature, December term, 1852, in which the petitioner claims to be seized as tenant in common with certain petitionees, of two undivided third parts of the same, and prays to have his share thereof set off to him in severalty. The said Porter & Rolfe appeared and filed their plea, setting forth:

1. That they did not hold said real estate, or any part thereof, together and undivided with the petitioner.

2. That they were sole seized thereof in their demesne, as of fee, and that the petitioner was not seized of any part thereof, as tenant in common.

Upon which issue being joined, it was ordered by the court that the same be sent to the court of common pleas, to be tried and found by the verdict of a jury.

The parties then agreed to submit the case to the decision of the superior court, upon the following statement of facts:

On January 1, 1811, Samuel Barnard, senior, being seized in fee of the whole real estate described in the petition, conveyed the same, by his warranty deed, of that date, to Samuel Tucke, who, at the same time, conveyed the same, by his quitclaim deed, of that date, to Elizabeth Barnard, wife of

the said Samuel Barnard, senior. The consideration expressed in said deed from Barnard to Tucke, was $5000, but it did not appear that said Tucke paid the same. The said Elizabeth Barnard died in 1815, leaving three children, Mary Barnard, Samuel Barnard, junior, and Harrison S. Barnard, lawful issue of her and the said Samuel Barnard, senior, who died in 1848 or 1849.

On March 5, 1850, the said Mary and Harrison S. Barnard, by their warranty deed of that date, conveyed two undivided third parts of said real estate to Charles Jewell, the petitioner, who thereupon took possession of the same.

About the year 1817, the said Samuel Barnard, senior, was put under guardianship, as a spendthrift, by the judge of probate for said county, and Samuel Barnard of South Hampton was appointed his guardian. In 1830, the guardian petitioned the probate court for license to sell the interests of his ward in said real estate, of which notice was given, and at a court of probate holden at Exeter on December 15, 1830, license was granted to him to sell at public auction, the interest of his ward in the same, copies of which petition, notice, decree and license were referred to as a part of this case.

On February 24, 1831, the guardian having been sworn, and having given notice, sold and conveyed, by his deed of that date, the interest of his ward in said real estate, to Samuel Barnard, junior, son of his said ward, a copy of which deed makes a part of this case.

On Sept. 28, 1836, the said Samuel Barnard, junior, by his deed of that date, conveyed the whole of said real estate, with covenants of warranty, to Joseph Brown, conditioned to be void if said Brown failed to fulfil his bond for the maintenance of the said Samuel Barnard, senior.

The said Brown mortgaged said real estate to Samuel Woodman, also to Horatio G. Cilley, which mortgages still remain unsatisfied. The right in equity of said Brown to redeem said real estate, was sold on execution against him,

and conveyed by a deputy sheriff to the said Porter & Rolfe, about the year 1850.

Either party had the liberty to refer to any deeds men-. tioned in the case.

Judgment was to be rendered by the superior court for partition of said real estate, or otherwise, according to the opinion of the court upon the foregoing case.

And it was ordered that the questions arising upon the case be transferred to the superior court.

*Stickney & Tuck*, for the petitioner.

The petitioner claims two undivided third parts of the real estate, by purchase from two of the three heirs of Elizabeth Barnard, who died seized of the property.

The license, by its terms, grants to the guardian authority to sell only the life estate of his ward.

The petition, the public notice given, and the evidence filed in court to show the propriety of the sale, are referred to in the license, and the guardian is authorized to convey to the purchaser all the right and title of his ward in the premises.

To determine, therefore, the extent of the license, the petition, the notice given, and the evidence filed, must be taken together and considered as one instrument. Any general expressions in the license are explained and limited by the petition, notice and evidence. Taking all these papers together, the guardian was authorized to sell only the life estate of his ward, which is included in the terms " all the right and title of his ward."

The same may be said of the deed from the guardian to Samuel Barnard, junior. The license is referred to in the deed, and to determine what is meant by the expression in the deed, of " all the right and interest of his ward," reference should be had to the license, and to the proceedings to obtain it. These papers, taken together, and the consideration paid, $321, for a farm of two hundred acres, show

clearly that " all the right and interest of his ward" in the premises intended to be sold, was only the life estate of the ward.

But as matter of law, the judge of probate had no right to grant license to sell any greater interest in the premises than was prayed for in the petition, and such license would be void, and the deed by the guardian, under such license, would be void, and would pass no interest to the purchaser.

The deed from Samuel Barnard, senior, to Samuel Tucke, and from Samuel Tucke to Elizabeth Barnard, wife of Samuel Barnard, senior, of January 1, 1811, vested the property in the wife, and Samuel Barnard, senior, had only a life estate in the property. There were no creditors, and those deeds being recorded at the time, are good against subsequent purchasers. Those deeds are in our possession, and are referred to to show that they were recorded in January, 1811, as appears by the certificate on them. That is sufficient notice to all subsequent purchasers; and if Samuel Barnard, junior, had purchased of Samuel Barnard, senior, or of his guardian, the whole estate, he could not hold the property against Elizabeth Barnard, or her heirs.

But we say that Samuel Barnard, junior, did not purchase or acquire by his deed of February 24, 1831, the whole estate. By the terms of the deed, he purchases and acquires only " all the right and interest" of Samuel Barnard, senior, in the premises. That interest was a life estate, and the fair construction to be put upon his deed, taken in connection with the license and the petition, and the consideration paid, is that he takes only a life estate, and if the deed undertakes to convey any thing more, it is void.

*Bellows*, for the petitionees.

The sale of Samuel Barnard to Samuel Tucke was a voluntary conveyance, nothing having been paid, and was void as to creditors and subsequent purchasers.

Samuel Barnard, junior, was a purchaser for a valuable

consideration, through the guardian, of Samuel Barnard, senior. And he stands the same as if he had purchased of the ward himself.

And the sale was good, unless there be a defect in the license. The petition was for leave to sell a life estate; but the license was to sell the whole, and so was the conveyance. And, as the ward's interest was the whole estate, the whole passed to Samuel Barnard, junior, whose title the petitionees now have.

EASTMAN, J. The deeds of Samuel Barnard, senior, to Tucke, and from Tucke to Elizabeth Barnard, dated January 1, 1811, gave a good title to Elizabeth Barnard.

A conveyance cannot be made by the husband directly to the wife. *Martin* v. *Martin,* 1 Greenl. Rep. 394; 2 Kent's Com. 129. But it may be done through the intervention of third persons; and the deed, if recorded, will pass the premises, if there are no creditors to interfere.

A voluntary conveyance is good against an heir-at-law. *Kimball* v. *Eaton,* 8 N. H. Rep. 391. It is good against all but creditors and purchasers without notice. In *Marshall* v. *Pierce,* 12 N. H. Rep. 131, *Gilchrist,* J., says that a conveyance made to the wife by a third person, upon a consideration paid by the husband, can be avoided by the creditors of the husband. Although, in that case, the point here presented was not raised, yet a fair deduction from the authority would seem to show that such a conveyance cannot be avoided by others who have notice.

No creditors of Samuel Barnard interfere in this case; and the recording of the deeds, which an inspection of them shows to have been duly made, was notice to purchasers. It is unnecessary to cite authorities to sustain this position. An attachment or purchase made, with the knowledge of the existence of a prior deed, even unrecorded, secures no rights against the holder of such deed. *Jackson* v. *Page,* 4 Wend. 585; *Connecticut* v. *Bradish,* 14 Mass. Rep. 300;

*Jackson* v. *Burgot,* 10 Johns. 457 ; *Butler* v. *Stevens,* 26 Maine Rep. 484; *Brown* v. *Manter,* 2 Foster's Rep. 471; *Montgomery* v. *Dorion,* 6 N. H. Rep. 250; *Odiorne* v. *Mason,* 9 N. H. Rep. 24.

The title of Elizabeth Barnard was therefore good, and her children would inherit the estate from her, after her decease, subject to any life estate which their father might have in the premises.

Mrs. Barnard left three children, Mary, Samuel, jr., and Harrison S. This petitioner has the title of two of them, acquired by conveyances made after the death of both their parents; and holding, as we do, that the deeds of 1811 were effectual to pass the estate to Mrs. Barnard, the proceedings in the probate court, whatever may have been their character, and the conveyance under them could not give to Samuel Barnard, jr., any greater interest in the estate than that which Samuel Barnard, sen., had in the premises at the time the license was granted. It is therefore unnecessary to inquire particularly into the probate proceedings. A purchaser under them, and claiming title through them alone, could not acquire any greater interest in the land than that which belonged to the ward, which was only a life estate.

At the time Barnard conveyed to Brown, in 1836, he had nothing in the premises, in possession, except the life estate of his father. As heir of his mother, however, he would be owner of one undivided third, on the death of his father. If the deed which he gave to Brown was a warrantee deed, with *full* covenants, as we infer from the case was the fact, the rights which he might acquire in the premises after 1836, would enure to Brown's benefit, and to the benefit of those claiming under him. *Wark* v. *Willard,* 13 N. H. Rep. 389 ; *Kimball* v. *Blaisdell,* 3 N. H. Rep. 533 ; *Bell* v. *Twilight,* 6 Foster's Rep. 406.

Porter & Rolfe are in possession, and their title is subject to that of the mortgages of Brown ; but by paying those mortgages, they acquire the whole title of Brown, which

would be that of Samuel Barnard, jr., and would be one-third of the premises. Samuel Barnard, sen., being dead, and there being no suggestion that the bond of Brown was not fully kept, Porter & Rolfe, therefore, held an undivided interest in the estate with the petitioner, and were properly made parties to this proceeding. Rev. Stat., ch. 206.

But we need not pursue the investigation further. We suppose, from the case, that the object of the agreed statement was to obtain the opinion of the court upon the question of the petitioner's rights. And as to those rights, we entertain no doubt that he has title to two undivided third parts; and that a committee should be appointed to make partition accordingly.