[File No. 6645.]

ROSE ABERLE, Appellant, v. DOROTHEA MERKEL, Christian Merkel, Also Known as Christ Merkel, Eva Merkel, John E. Merkel, Jacob F. Merkel, Fred Merkel, Also Known as Frederick Merkel, Matt Merkel, Also Known as Matheis Merkel, Gustave Merkel, Ralph Merkel, Also Known as Rudolf Merkel, Julius J. Merkel, August Merkel, Margaretha M. Madche, Elizabetha Brandner, Max A. Wishek, Respondents.

(291 N. W. 913.)

Opinion filed April 26, 1940.   Rehearing denied May 11, 1940.

*Bernard Kelber,* for appellant.
*Wishek & Wishek,* for respondents.

BURR, J.   This is an action to determine adverse claims in real estate.   The land involved consists of 1120 acres of land in McIntosh county, including a tract of 160 acres in section 35, township 129, range 67; 320 acres in Dickey county; and two lots in Forbes.

All the land was owned by Christian Merkel.   He died intestate October 8, 1935.   Dorothea Merkel was his wife.   The other defendants, with the exception of Max Wishek, are their children, one of whom is Christian Merkel, hereafter known as the son.

On June 13, 1936, judgment for $251.72 was duly entered in the district court in and for McIntosh county, in favor of the plaintiff and against Christian Merkel, the son, and was docketed that day in the office of the clerk of the district court of McIntosh county, and in the office of the clerk of the district court of Dickey county on June 15, 1936.

The estate was probated in the county court of Dickey county as an entity, but the record does not show when the probate proceedings began.   The undisputed facts show that this son had a ⅔₃ interest in all of the estate at the time of its probate.

On December 5, 1936, the mother, the administratrix, filed her inventory and appraisement of the estate.   The real property is appraised in the sum of $7,500, which includes an appraisement of $1,000 for the two lots in Forbes, listed as the homestead.   The inventory lists personal property consisting of notes and accounts due from the various children and appraised at $5,931.   This list includes a note given by the son to his father for $548, dated June 23, 1926, appraised at $274, and another note for $60, dated March 14, 1927,

appraised at $30. The record does not show any debts of the estate, or any claims filed against the estate. If there were any, they were settled without recourse to the real estate.

On March 8, 1938, the heirs entered into a contract between themselves, and with the mother as administratrix, by the terms of which they settled the debts due the estate from the heirs, and divided the property among themselves so that the mother was given title to the homestead, and accounts due from seven of the heirs in the agreed sum of $2,253.82, including the two notes due from Christian, the son, valued at $346.56. In this contract all the parties agreed that Christian Merkel, the son, "is to have the title and possession of" the land situated in section 35, "subject to the payment of $346.56, which sum is to constitute a first and prior lien against said premises until paid in full, together with interest at 5% per annum from March 1st, 1938."

On June 9, 1938, the mother and the son entered into a written agreement, reciting that the son was indebted to the estate in the sum of $346.56, that all of the heirs had agreed he was "to receive as his share of the said estate" the real estate situated in section 35, "subject however to payment of $346.50, which sum by law and by agreement constitutes a first and prior lien against the said premises," that this debt had been given to the mother as part of her share, that the son was unable to pay this debt and unable "to clear said premises from said lien and from the lien of the county for taxes," and further reciting that the mother, "in order to collect the said indebtedness would be compelled to foreclose the said lien by action at law with consequent large expense."

Therefore the mother and the son agreed that the son would assign unto his mother "all of his right, title and interest in and to the said quarter section, and does hereby so sell, assign and set over and unto the said Dorothea Merkel, the said real estate, and that the said Dorothea Merkel does hereby satisfy and discharge the said debt and lien of Christian Merkel, Jr., in the sum of $346.56."

This he did. Both of these contracts were submitted to the county court. The county court adopted these settlements, and incorporated them in its final decree of distribution, giving to the mother the homestead, $2,253.82 of the personal property, and the land in section 35;

and this son received no land or share. Thereafter the estate was closed and the administratrix discharged.

Max Wishek is made party defendant, owing to the fact that he has a claim for $23.82 as attorneys' fees in the settlement of the estate, which is recognized by the heirs, and all of the assignments of the real estate in McIntosh county are made subject to the payment of this sum.

The plaintiff urges that this settlement and agreement made between the parties totally ignored her lien against the interest of Christian Merkel, the son, in the estate of his father; that her judgment was a lien against this interest; that this lien against Christian Merkel's interest is superior to that of any other party to this action; and that the settlement made between the heirs is not binding upon her.

The main facts stand out prominently. The father died October 8, 1935, without disposing of his property by will.

Under the provisions of § 5742, Compiled Laws, 1913, "The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the county court and to the possession of any administrator appointed by that court for the purpose of administration."

Hence, upon the death of the father, a $\frac{2}{33}$ interest in all of the property—real and personal—passed immediately to the son, Christian, subject to the control of the county court for the purpose of administration, and for that purpose possession of the property may pass to the administrator. In reality it passes at once to the heirs, without any appointment of an administrator. See Elder v. Horseshoe Min. & Mill. Co. 9 S. D. 636, 70 N. W. 1060, 62 Am. St. Rep. 895. The property is the property of the heir at once. When the administrator is appointed, he may take possession of the property for the purpose of administration, and the county court will have control of it; but this administration is primarily for the purpose of paying the debts of the decedent and to see that the property descends and is distributed orderly. As said in Friese v. Friese, 12 N. D. 82, 85, 95 N. W. 446, 447, "Property not disposed of by will passes to the heirs of the intestate. . . . Such property is to be distributed subject to the payment of the debts of the intestate." And quoting from Re Strong, 119 Cal. 663, 665, 51 P. 1078, 1079, we say: "The whole sub-

ject matter of dealing with the estates of deceased persons is one of statutory regulation, and the policy and intent of our statute very clearly contemplate that property of decedents left undisposed of at death . . . shall, for the purposes of ascertaining and protecting the rights of creditors and heirs, and properly transmitting the title of record, be subject to the process of administration in the probate court."

The rights of the heir, therefore, in the property are not in any way affected, except in so far as it may be necessary, in the administration of the estate, to use the property for the purpose of paying debts of the decedent. In fact, the heir need not wait until the settlement of the estate. After the lapse of the time limited for filing claims, he may have his "share of the estate to which he is entitled, . . . given to him upon his giving bond for the payment of his proportion of the debts of the estate." Comp. Laws 1913, § 8841. The property is his, subject merely to the administration.

The record here clearly shows that this property was not used for the settlement of any debts of the decedent, was not in any way affected by such debts, and was not used by the administratrix in any way for the settlement of the estate. The question was merely one of transmitting title to the heirs.

The next important fact noticeable is that this judgment was docketed in both counties. The effect of docketing this judgment was that it became "a lien on all the real property except the homestead in the county where the same is so docketed of every person against whom any such judgment shall be rendered, which he may have at the time of the docketing thereof in the county in which such real property is situated or which he shall acquire at any time thereafter, for ten years from the time of docketing the same in the county where it was rendered, . . ." Comp. Laws 1913, § 7691.

Thus it is apparent that this judgment, as soon as it was docketed, was a lien upon all of the son Christian's interest in all of the real estate of his father in these two counties, as no part of it was his homestead. In John Leslie Paper Co. v. Wheeler, 23 N. D. 477, 482, 137 N. W. 412, 414, 42 L.R.A.(N.S.) 292, 32 Am. Bankr. Rep. 688, the effect of the docketing of a judgment is set forth. It is true, in the case cited, the heir obtained the property by will, but we say: "Such

interest created in respondent (the heir) a vested remainder, constituting him the owner of real property within the meaning of § 7082 (§ 7691, Comp. Laws) and the judgment attached as a lien thereon unless, as before stated, the same constituted his homestead."

Thus at the time that the heirs entered into the agreement between themselves, transferring to Christian the land in section 35 in lieu of his entire $\frac{2}{33}$ interest in the whole estate, this judgment was a lien on all of his $\frac{2}{33}$ interest.

The record shows, as a third important fact, that Christian owed the estate the two notes described.

There is no dispute as to this debt. Hence the county court had the power to withhold from the distributive share of the son, Christian, "an amount equivalent to his indebtedness to the estate." As shown in Stenson v. H. S. Halvorson Co. 28 N. D. 151, 156, 147 N. W. 800, L.R.A.1915A 1179, Ann. Cas. 1916D 1289, the strict accuracy of the conclusion that the lien of the judgment attached immediately to the $\frac{2}{33}$ interest of Christian in the estate "is dependent, however, upon the existence or nonexistence of an equitable power in the county court, in the distribution of the estate, to withhold from . . . distributive share an amount equivalent to his indebtedness to the estate."

Hence we hold therein, "an indebtedness owing by an heir, held, to constitute a prior equitable lien upon such heir's distributive share of the estate as against the liens of judgments docketed against him."

The county court, therefore, had the power to determine "the indebtedness of the distributee (Christian) to the estate, and order a deduction of the same from his share." Stenson v. H. S. Halvorson Co. (N. D.) supra.

This, however, was not done. Apparently all the heirs were in harmony one with the other. All of the estate, real and personal, belonged to them. As between themselves, they had the right to determine and agree as to how the property would be divided. As stated in Norman v. Miller, 40 S. D. 399, 167 N. W. 391: "The law favors compromise of disputed claims, especially those affecting settlement of estates and which settlements, owing to the relationship of interested parties, will tend to promote family peace and harmony."

The county court is interested in the settlement of the estate, payment of the debts and the oversight of descent. Where the parties

agree among themselves as to how the property is to be distributed eventually, the court, if satisfied there is no fraud or duress, ordinarily will accept such agreement. In this case the county court did so, and incorporated the terms of the settlement in its final decree of distribution.

The lien of the estate never was foreclosed. After this agreement was made between the heirs, the mother made a separate and distinct agreement with the son whereby she canceled this debt and received therefor the property in section 35. In other words, she bought from her son, Christian, the land in section 35 for the $346.56, and this agreement was recognized by the county court.

But the judgment creditor was not a party to this agreement. She had a lien on the $\frac{2}{33}$ interest in the entire real estate, subject to whatever lien the estate had against Christian's interest for his indebtedness. The heirs had notice of this judgment. They saw fit to ignore the judgment creditor. They could not divest her of her lien. They could have insisted on the lien of the estate being foreclosed. It is true they sought to perpetuate the lien, and did agree it would attach to the land in section 35.

The appellant urges that while the estate may have had a lien upon the share of the heir to protect the estate and to collect the debt due from the heir, nevertheless, this lien exists only for the benefit of the estate and can not exist in favor of an individual.

The equitable lien on the distributee's share, through which the estate could have collected its debt, was property. Comp. Laws 1913, §§ 5245 and 5253. See Sox v. Miracle, 35 N. D. 458, 470, 160 N. W. 716, 719. As property it may be transferred. (Comp. Laws 1913, § 5490.) The administratrix, to the entire satisfaction of all the other heirs, was a party to the contract of transfer of this equitable lien to herself. This transfer was valid. No heir contests it.

The lien of the estate was against all of the son's interest. The action of the plaintiff is based on the status quo when her lien came into being. All she is entitled to here is to have her right established as it was then. Clearly, it was not the intention of the estate or of the heirs to destroy the lien which the estate had. They may have attempted to confine it to certain land, but here the plaintiff is seeking equity

and is asking to have her interest in the land established as and of the time that her judgment was docketed.

Thus we have a situation where the estate had a lien against all of the son's interest in the real and personal property, superior to the lien of the plaintiff, and the plaintiff had a lien on the interest of the son in the real property. The record does not show the value of the personal property, other than the appraised valuation, which is set at $5,931. The record does not show that any portion of this was used for the payment of debts of the estate, and we know nothing about the costs of administration.

The record is not complicated in any way by the question of homestead or exemptions. All of the parties agreed that the mother should receive the homestead in fee and $2,253.82 of the personal property. She made no claim for exemptions, or if any exemption was claimed, it clearly was included in the amount allowed her from the personal property. The son's ⅔₃ interest in the personal property at the appraised valuation amounts to more than the amount of the lien claimed by the estate; therefore, it was the duty of the administratrix, the mother, to collect this debt out of whatever personal property was coming to the son before any resort would be made to his interest in the real property. She is presumed to know of this second lien held by the plaintiff on the real property.

The general equity rule with reference to marshaling assets is set forth in § 6716, Compiled Laws 1913, which provides: "When one has a lien upon several things and other persons have subordinate liens upon, or interests in some but not all of the same things, the person having the prior lien (in this case, the administratrix and the estate) if he can do so without risk of loss to himself or of injustice to other persons, must resort to the property in the following order, on the demand of any party interested:

"1. To the things upon which he has an exclusive lien.

"2. . . . etc."

As pointed out in Douglas County State Bank v. Steele, 54 N. D. 686, 691, 210 N. W. 657, 659: "The statute is merely an enactment of the equitable rule. . . . The statute, like the rule, has regard to the rights of all who have 'interests' in the property involved. Like

the rule it applies only where it may do so without risk of loss to the senior lien holder or injustice to other persons."

· This rule is not confined to cases wherein the other interested party makes a demand. Equity requires the holder of the first lien to marshal the assets when he knows of the second lien.

"Where a person holds a first lien on property on which another holds a second lien, and he also has a lien upon other property, on which there is no other lien, it becomes his duty, as soon as he learns of the second lien, to respect the rights of the holder of such second lien to have the property on which he (the second lien holder) has no lien first applied in extinguishment of the first lien. The law will thwart every attempt of the holder of the first lien to escape the obligation of this equitable duty."—Union Nat. Bank v. Moline M. & S. Co. 7 N. D. 201, 202, 73 N. W. 527.

See also Merchants State Bank v. Tufts, 14 N. D. 238, 103 N. W. 760, 116 Am. St. Rep. 682. This language in Johnson v. Rutherford, 28 N. D. 87, 99, 147 N. W. 390, 393, is applicable—"After personalty is sold, any deficiency may be taken from real estate, to which, to that extent, resort may be had." But the mother did not seek to foreclose the lien which had been assigned to her. Rather, she chose to ignore whatever interest the son had in the personal property, apparently abandoned her lien, and traded the debt for the land in section 35.

· Equity requires us to hold that the plaintiff has a lien on the $\frac{2}{33}$ interest in all of the real estate described, both in McIntosh county and in Dickey county; but in realizing on this judgment, we will require her first to resort to the real estate other than the north half of the northwest quarter and the north half of the northeast quarter of section 35, the land held by the mother. This will be the most equitable disposition we can make under the circumstances.

In this case the lower court found that the plaintiff had no interest in or lien upon section 35, quieted title in all the land against the plaintiff; and ordered that the plaintiff "be forever debarred and enjoined from further asserting the lien and claim of her said judgment against the said property herein and in the complaint described."

The plaintiff appealed and demanded a trial de novo. The judg-

ment must be reversed. The plaintiff has a lien on the ⅔₃₃ interest, as hereinbefore set forth, to the extent of her judgment with interest, and therefore, the lower court will enter judgment in accordance herewith.

NUESSLE, Ch. J., and CHRISTIANSON, MORRIS, and BURKE, JJ., concur.