Mattie AURE, Plaintiff and Appellant,

v.

H. A. MACKOFF; Norbert J. Muggli; Ward
M. Kirby; Theodore Kellogg; Joe Thomp-
son; Keith V. Bacon; James L. Taylor;
Roger O. Herigstad; H. H. Hester; Otto
H. Olson; William H. Wallraff; Clara
A. Miller; Jesse M. Miller; A. S. Ander-
son; Frank J. Traynor; A. M. Christen-
sen; J. C. Zeller; Chris Babler; Sam H.
Coleman; W. R. Olson; Jerome A. Whit-
aker; Roy Keating; Hjalmer J. Olson, as
Administrator of the Estate of Lena Ol-
son, deceased; Hjalmer J. Olson, also
known as Hjalmer Olson and George Olson,
as heirs and only heirs at law of Lena Ol-
son, Deceased; Amerada Petroleum Cor-
poration, a corporation organized under
the laws of Delaware; and all other per-
sons unknown claiming any estate or in-
terest in, or lien or encumbrance upon the
property described in the Complaint, De-
fendants;

Jerome A. Whitaker; D. T. McCarthy; A.
M. Christensen; Otto H. Olson; Joe
Thompson; Keith V. Bacon; H. H. Hes-
ter; W. R. Olson; Sam H. Coleman;
Amerada Petroleum Corporation; Hjalmer
J. Olson, Individually and as Administra-
tor; George Olson; H. A. Mackoff; Theo-
dore Kellogg; Norbert J. Muggli; Ward
M. Kirby; Chris Babler; James L. Tay-
lor; Roger O. Herigstad; J. C. Zeller;
Frank J. Traynor; Clara A. Miller, and
Jesse M. Miller, Respondents.

No. 7792.

Supreme Court of North Dakota.

Dec. 29, 1958.

John O. Garaas, Watford City, Walter O. Burk, Williston, for plaintiff and appellant.

Joseph P. Stevens, Minot, for Jerome A. Whitaker, D. T. McCarthy, A. M. Christensen, Otto H. Olson, Joe Thompson, Keith V. Bacon and H. H. Hester.

Bosard & McCutcheon and Eugene Coyne, Minot, for W. R. Olson.

Harold J. Fisher and John S. Miller, Tulsa, Okl., for Sam H. Coleman.

William Beede, Williston, for Amerada Petroleum Corp.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for Hjalmer J. Olson personally and as administrator of estate of Lena Olson, deceased; and George Olson, H. A. Mackoff, Theodore Kellogg, Norbert J. Muggli and Ward M. Kirby.

Erling Swenson, Minneapolis, Minn., for Chris Babler.

Everett E. Palmer, Williston, for James L. Taylor.

Ilvedson, Pringle, Herigstad & Meschke, Minot, for Roger O. Herigstad.

John F. Mullaney, Watford City, for J. C. Zeller, Frank J. Traynor and Chris Babler.

Strutz, Jansonius & Fleck, Bismarck, for Clara A. Miller and Jesse M. Miller.

. MORRIS, Judge.

This is an action to determine adverse claims to the South one-half of Section 19, Township 151, Range 95, McKenzie County, North Dakota. On June 19, 1929, Matias Aure was the owner in fee simple of this land. On that date he executed and delivered to the State of North Dakota a real estate mortgage covering the land to secure the payment of $2,400. He was then a single man and later married the plaintiff, Mattie Aure. On December 2, 1937, the Aures, as husband and wife, executed an assignment of royalty to W. R. Olson as assignee purporting to:

"sell, assign, transfer, convey and set over unto the said assignee, all of my right, title and interest in and to Ten per cent (10%) Royalty of all the oil and of all the gas produced and saved"

from the land described in this action,

"To have and to hold unto the said assignee, his heirs, administrators, and assigns, said royalty as above set forth, and said oil and gas so produced and saved from said lands to be delivered free of cost to the royalty owner in the pipe line serving said premises or tanks erected thereupon for the purpose of storing such products, together with the rights, privileges and benefits to be derived therefrom, and I do hereby assign said royalty under the lease now covering said lands as well as any lease, or leases, that may be hereafter made covering said premises and agree to warrant and defend the title to the same, and that I have lawful authority to sell and assign said royalty."

This instrument was recorded in the office of the register of deeds of McKenzie County on December 15, 1937.

W. R. Olson subsequently sold and assigned portions of the royalty described in the above agreement. As a result of subsequent assignments the following persons appear to be the owners of the ten per

cent royalty originally assigned to Olson in the following proportions:

| | |
|---|---|
| W. R. Olson | $\frac{3}{20}$ of 1% |
| Chris Babler | $\frac{1}{4}$ of 1% |
| Otto H. Olson | 1 $\frac{1}{4}$% |
| Roger O. Herigstad | $\frac{1}{2}$ of 1% |
| D. T. McCarthy | 1% |
| J. C. Zeller | $\frac{1}{4}$ of 1% |
| Clara A. and Jesse Miller | $\frac{1}{2}$ of 1% |
| William H. Wallraff | $\frac{1}{16}$ of 1% |
| James L. Taylor | $\frac{3}{20}$ of 1% |
| Keith Bacon and Joe Thompson | 1% |
| Hjalmer Olson | $\frac{1}{6}$ of 1% |
| Lena Olson | $\frac{5}{24}$ of 1% |
| Amerada Petroleum Corporation | 3 $\frac{3}{16}$% |
| A. M. Christensen | 1 $\frac{1}{4}$% |
| Theodore Kellogg | $\frac{35}{800}$ of 1% |
| Ward M. Kirby | $\frac{20}{800}$ of 1% |
| Norbert J. Muggli | $\frac{20}{800}$ of 1% |
| H. A. Mackoff | $\frac{25}{800}$ of 1% |

The State of North Dakota foreclosed its mortgage and included the owners of record of royalty interests in that proceeding. A sheriff's deed was issued to the State August 28, 1941.

On February 17, 1942, the State sold the land to Matias Aure upon a contract for deed wherein the State reserved one-half of all of the oil, gas and other minerals in and under the land.

On September 18, 1947, Matias Aure and Mattie Aure, his wife, executed an oil and gas lease upon a one-half interest in the land to Thomas W. Leach and A. M. Fruh whereby the lessees were granted seven-eighths of the oil and gas that might be produced under the lease and reserved to the lessors a royalty of one-eighth. On November 27, 1948, the lessees assigned the lease to Amerada Petroleum Corporation.

The oil and gas lease executed by the Aures provides that it shall continue so long as oil or gas or either of them is produced from the land. Oil and gas are being so produced.

Matias Aure died and by a final decree entered in the County Court of McKenzie County on May 2, 1950, the residue of his estate which included the contract for deed with the State of North Dakota was decreed to Mattie Aure. She fulfilled the contract and on October 3, 1955, the State issued to her a quitclaim deed to the land subject to a reservation to the State of fifty per cent of all oil, natural gas or minerals which may be found on or underlying the land. This deed was recorded October 11, 1955.

The plaintiff contends that the royalty interests of the defendants claiming through the original royalty assignment to W. R. Olson were extinguished by the foreclosure of the State's mortgage and that the quitclaim deed from the State conveyed to her the land and fifty per cent of the oil and gas thereunder free from the royalty interests now claimed by the defendants.

The defendants on the other hand contend that the plaintiff having been a party to the original royalty assignment to W. R. Olson which contained a warranty of title is estopped from contending that the foreclosure extinguished the royalty interest. They argue that when the plaintiff through her deed from the State acquired title to fifty per cent of all oil, natural gas or minerals found on or underlying the land, the landowner's interest to the extent of ten per cent of the royalty inured to the defendants as owners of the royalty assigned to W. R. Olson under the provisions of Section 47-1015, NDRC 1943, which reads:

"Where a person purports by proper instrument to grant real property in fee simple and subsequently acquires any title or claim of title thereto, the same passes by operation of law to the grantee or his successors."

This statute is not applicable to the assignment of royalty to W. R. Olson because it does not purport to grant real property in fee simple. It purports to "sell, as-

sign, transfer, convey and set over unto the said assignee, all of my right, title and interest in and to Ten per cent (10%) Royalty * * * ". It is in the nature of a quitclaim and an after acquired title does not pass by virtue of the statute. Bilby v. Wire, N.D., 77 N.W.2d 882; State v. Kemmerer, 14 S.D. 169, 84 N.W. 771. See also Annotations in 44 A.L.R. 1276 and 162 A.L.R. 556.

But the inapplicability of the statute is not determinative of this case. The royalty assignment contains the further provision that the Aures "agree to warrant and defend the title to the same." Thus we have an apparent quitclaim assignment of a ten per cent royalty with a covenant to warrant and defend the title thereto.

In Corbett v. LaBere, N.D., 68 N. W.2d 211, we construed an assignment of royalty similar to the one here involved to be a grant of an interest in real property. A covenant of warranty of title to real estate runs with the land. Section 47–0426, NDRC 1943. A warranty as such does not enlarge the estate conveyed but it may operate as an estoppel. In 19 Am.Jur., Estoppel, Sec. 19, p. 618, it is said:

"Since a quitclaim deed as such purports to grant only the right, title, or interest of the grantor, and not the fee or any particular estate or interest, the addition of a warranty against the grantor or those claiming by, through, or under him will not estop the grantor to assert a title subsequently acquired, assuming that it is not derived through any act or conveyance of his own prior to the deed in question."

The last clause of the above quotation pregnantly portends the answer to the question now confronting us.

We bear in mind that Matias Aure was the original owner and mortgagor of the entire estate in the land, that he, together with the plaintiff, his wife, executed the assignment of royalty to W. R. Olson, that he made the purchase from the State after foreclosure and that after his death she as his sole heir and by virtue of a decree of the county court became the owner of his contract of purchase which she proceeded to fulfill. She stands here in somewhat of a dual capacity. She is her husband's successor by operation of the laws of descent and distribution and she is also an original party to the warranty which is now being asserted against her.

"In this state a mortgage conveys no title to or estate in the property covered by the mortgage, but is merely a contract by which specific property is hypothecated as security for the performance of an act." Mechtle v. Topp, 78 N.D. 789, 52 N.W.2d 842, 844.

When the Aures executed an assignment to W. R. Olson of all their right, title and interest in and to a ten per cent royalty Matias Aure was the owner of the entire estate so assigned. True, it was subject to a mortgage to the State of North Dakota but that mortgage was only a lien. There was no other or outstanding estate paramount to that of Matias Aure. The assignment conveyed to Olson the complete and entire estate in a ten per cent royalty. We therefore need not be concerned with the rule that an estate cannot be enlarged by general warranty.

The warranty was plainly stated in the instrument that the assignors executed. It must have been intended by the parties to have some meaning and effect. While a true quitclaim deed conveys or grants only the right, title and interest of the parties who executed it and will not ordinarily estop the grantor from acquiring and asserting against the grantee or his assigns an outstanding paramount title, when such a conveyance contains a warranty of title the warranty estops the warrantor from asserting against the grantee or his assigns any after acquired title derived through any act or conveyance of the warrantor prior to the deed in question. See Bell v. Twilight, 26 N.H. 401; Comstock v. Smith, 13 Pick., Mass., 116; 23 Am.Dec. 670.

The mortgage lien created by Matias Aure was foreclosed and ripened into a sheriff's deed that transferred title to the State. That title had its inception in the creation of the lien by Matias Aure. He repurchased the land from the State on a contract. Under the principle of estoppel arising from the warranty of title in his assignment to Olson the title acquired pursuant to that contract by his successor, the plaintiff herein, inures to the benefit of Olson and his assigns to the extent of the title acquired to the property conveyed by the royalty assignment. The correctness of our determination in this respect is strengthened by the fact that the plaintiff in addition to being the successor to the title of Matias Aure is an original party to the warranty that is the basis of the estoppel.

In two cases, Schultz v. Cities Service Oil Co., 149 Kan. 148, 86 P.2d 533, and Rowell v. Rowell, 119 Mont. 201, 174 P.2d 223, 168 A.L.R. 1141, the courts under somewhat similar facts reach different results than we have reached in this case. In those cases after acquired title statutes were held inapplicable and it was further held that the original owners were not estopped by the covenants of warranty from acquiring full title to property from purchasers at foreclosure sales under mortgages that were outstanding against the property at the time the owners executed their general warranty upon the theory that the warranties were rendered nugatory by the foreclosures. In Hanlon v. McLain, 206 Okl. 227, 242 P.2d 732, the Supreme Court of Oklahoma refused to follow these cases and applied the doctrine of estoppel by deed.

In Rooney v. Koenig, 80 Minn. 483, 83 N.W. 399, the syllabus by the court states:

"1. Where land is conveyed by a deed of general warranty, any superior outstanding title subsequently acquired by the grantor will inure to the benefit of the grantee and his assigns.

2. Where the only reference in a warranty deed to a mortgage on the land is to except it from the covenant against incumbrances, the exception does not extend to or affect the covenant of warranty, and any title thereafter acquired by the grantor by the foreclosure of the mortgage will inure to the benefit of the grantee and his assigns. Sandwich Manufacturing Co. v. Zellmer, 48 Minn. 408, 51 N.W. 379, followed."

While the point is not specifically mentioned it is clear that the court did not consider that the warranty was affected by the foreclosure and sale under the mortgage to a third party. Effect was given to the warranty by holding that the title acquired by the grantor after foreclosure inured to the benefit of the grantee and his assigns. To the same effect are Federal Land Bank of Columbia v. Bank of Lenox, 192 Ga. 543, 16 S.E.2d 9; Home Owners' Loan Corporation v. Guaranty Title Trust Co., 168 Tenn. 118, 76 S.W. 2d 109; and Parsons v. Little, 66 N.H. 339, 20 A. 958.

■ A study of our own decisions leads us to the conclusion that the doctrine of estoppel by deed is fully applicable here and is not limited to cases falling within our statutory provisions. In Smith v. Gaub, 19 N.D. 337, 123 N.W. 827, the plaintiff conveyed title to real property free from encumbrances except a certain mortgage. The conveyance contained a general warranty. The plaintiff later purchased the mortgage and brought an action to foreclose it against the defendant as grantee. This court held that the mortgage purchased by the plaintiff was not excepted from the covenant of warranty contained in the deed or assumed by the defendant and that the purchase thereof by the plaintiff inured wholly to the benefit of the defendant and the plaintiff could not maintain an action to foreclose. In the third paragraph of the syllabus by the court it is said:

"The purchase by a warrantor of title to real property, of an incum-

brance covered by his warranty for any purpose other than the protection of the title conveyed by him, and the assertion by him adversely to the title of his warrantee of paramount title based on such incumbrance, is a breach of the covenant of warranty. In equity the title so purchased by him inures wholly to the benefit of the warrantee, and a court of equity will not permit him to assert the same adversely to the title so warranted by him to such warrantee."

In Yerkes v. Hadley, 5 Dak. 324, 40 N.W. 340, 2 L.R.A. 363, a married woman executed a mortgage with her husband wherein she warranted the title to the land. A prior mortgage was foreclosed and deed issued to the prior mortgagee. The wife acquired his title. It was held that because of the mortgage she had signed the title which she obtained inured to the benefit of the second mortgagee and as against him she was estopped from asserting the title she had purchased. In Sommers v. Wagner, 21 N.D. 531, 131 N.W. 797, 799, a mortgagor executed a second mortgage in the form of a deed which contained a general warranty. She later purchased a prior mortgage. The court followed Smith v. Gaub, supra, and said:

"Under the deed containing covenants of general warranty, after its delivery, it was the grantor's duty to pay the outstanding encumbrance. Until such encumbrance was paid or satisfied, she was personally liable under her covenant of warranty. Mickels v. Townsend, 18 N.Y. 575. She could not take an assignment of such outstanding encumbrance to herself without it operating as a discharge of such mortgage assigned, regardless of her intent in the matter. If she intended the assignment as such, it operated as a satisfaction of the mortgage, and, of course, if it was intended to be a satisfaction instead

of an assignment, and the money was paid to the mortgagee to satisfy the mortgage, the same was thereby satisfied."

In Merchants National Bank v. Miller, 59 N.D. 273, 229 N.W. 357, the court considered the application of our statute, Section 35–0206, NDRC 1943, which provides that:

"Title acquired by the mortgagor subsequent to the execution of the mortgage inures to the mortgagee as security for the debt in like manner as if acquired before the execution."

Again Smith v. Gaub, 19 N.D. 337, 123 N.W. 827, was approved. But what is more important is the court's determination that the mortgagors discharged in bankruptcy after foreclosure of the first mortgage under which he subsequently again acquired title to the property in question did not remove the bar of estoppel arising from his warranty of title in a second mortgage. In reaching that conclusion this court quoted at length from Gregory v. Peoples, 80 Va. 355, as follows:

"A discharge in bankruptcy releases the warrantor from liability for covenants broken, but does not affect the estoppel, because the covenant runs with the land. * * * Such a covenant is not only one running with the land, for the breach of which the covenantor is liable in an action for damages, but is something more. By its operation a paramount title, subsequently acquired by him enures to the benefit of the covenantee, and in equity he is estopped from asserting that any outstanding title existed inconsistent with what he undertook to convey. It has therefore been held that a discharge in bankruptcy, while effectual to release the covenantor from liability in an action for a breach of the covenant, does not at all affect the estoppel. This is on the ground that, as the release is by force of the

statute, and not by the act of the covenantee, or those claiming under him, no greater effect will be given to it than is warranted by the terms of the statute; and for the further reason that existing personal liability is not necessary to work an estoppel, and consequently there is no necessary connection between the personal liability of the debtor on his covenant and the estoppel which arises therefrom."

We have reached the conclusion that to follow the Kansas and Montana cases heretofore cited and hold that a mortgagor who after the execution of a mortgage conveys the mortgaged property without mentioning the mortgage by a conveyance containing a warranty of title may after foreclosure of the mortgage reacquire title from the purchaser at the foreclosure sale free of any obligation or liability on the warranty is inconsistent with the prior decisions of this court and the weight of authority.

■ We hold that the title of the State of North Dakota acquired by foreclosure of the mortgage given by Matias Aure when conveyed to Mattie Aure as successor to the mortgagor inured to the benefit of W. R. Olson and his assigns to the extent of a ten per cent royalty interest by virtue of estoppel arising out of the warranty contained in the assignment of royalty given by the mortgagor in which Mattie Aure joined. The judgment is affirmed.

GRIMSON, C. J., and BURKE and SATHRE, JJ., concur.