**August NOSS, Earl Ferguson, Laurence Smitton, and Violet F. Hanson, Individually and as personal representative of the Estate of Anna Fehrman, deceased, Plaintiffs and Appellants,**

v.

**Lillian E. HAGEN et al., Defendants and Appellees.**

**Civ. No. 9492.**

Supreme Court of North Dakota.

Jan. 8, 1979.

Pringle & Herigstad, Minot and McIntee & Whisenand, Williston, for plaintiffs and appellants; argued by Herbert L. Meschke, Minot.

Rolfstad, Winkjer, McKennett, Kaiser & Stenehjem, Williston, for Steven A. Robinson, George B. Robinson, Lillian E. Hagen, Betty J. Hagen Grovogel, Lillian Louise Crowder, Roberta Jean Miller, Jay Hagen Gilliland and Tom Harrison Gilliland.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for Liberty Nat. Bank & Trust Co.

Everett E. Palmer, Williston, for Ethel M. Popham, Arthur J. Sharbo and Walter J. Sharbo.

William S. Heigaard, Langdon, for Mattie S. Haaven and Lynn J. Haaven and Ethel and Claude Crockett.

Kelsch, Kelsch & Tudor, Bismarck, for Elsbeth E. A. Godwin.

Fleck, Mather. Strutz & Mayer, Bismarck, for Dean F. Smith, Bruce Alfson, Norman Jessen, Marshall Simpson, Delmer Duffy, Helen Brown, John Klemer, Steven Harris and Ellen E. Smith.

John H. MacMaster, Williston, for Neva H. MacMaster and Audrey H. Bourgeois.

F. J. Smith, Bismarck, for V. L. Gilbreath, trustee, and George M. Thompson, trustee.

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for St. Mary's Cathedral.

Bjella & Jestrab, Williston, for Grand Forks Oil Pool Trust, defendants and appellees; argued by Russell R. Mather, Bismarck.

ERICKSTAD, Chief Justice.

The plaintiffs and appellants seek to quiet title to a two and one-half percent royalty interest in the oil and gas in 160 acres in Williams County, including the right to approximately $60,000 in proceeds from the two and one-half percent royalty interest that accrued from oil produced from that land. They are the descendants of the former record owner, Gustav Noss, and claim title to the royalty interest and the proceeds through a 1949 auditor's tax deed. The defendants and appellees claim title through an assignment by Noss to M. G. Jacobson of the two and one-half percent royalty interest in 1937. The district court found for the assignees, and the descendants of Noss appeal. We affirm.

Gustav Noss homesteaded 160 acres in Williams County, receiving a United States patent covering the property in 1913. Noss lived on the property continuously until he died intestate on October 23, 1939. Although Noss' estate was not probated in North Dakota, he was survived by his wife, Emilge Noss, and four sons, August Noss, John Fehrman, Earl Ferguson, and Laurence Smitton. Mrs. Noss was institutionalized in Minnesota hospitals and sanitoriums from 1904 until she died intestate on May 26, 1967. In 1904, each of the sons was placed in a separate foster home, apart from both parents. Neither Mrs. Noss nor the sons ever lived upon the real property in question, except for a brief period from 1923 to 1926 when John Fehrman and his family lived with his father on the premises. John Fehrman died in 1974 and plaintiff, Violet E. Hanson, is his daughter and sole surviving descendant.

On September 25, 1937, Noss conveyed to M. G. Jacobson an undivided two and one-half percent royalty in all the oil and gas produced and saved from the property. The conveyance contained the following warranty:

"To have and to hold unto the said assignee, his heirs, administrators, and assigns said royalty as above set forth, and said oil and gas so produced and saved from said lands to be delivered free of

cost to the royalty owner in the pipe line serving said premises or tanks erected thereupon for the purpose of storing such products, together with the rights, privileges and benefits to be derived therefrom, and I do hereby assign said royalty under the lease now covering said lands as well as any lease, or leases, that may be hereafter made covering said premises, *and agree to warrant and defend the title to the same*, and that I have lawful authority to sell and assign said royalty." [Emphasis added.]

Jacobson made a number of assignments of royalty commencing on October 8, 1937, and the defendants are all holders of parts of the royalty through these assignments.

Noss did not pay the 1937 taxes on the property and on December 13, 1938, a tax sale was held and a certificate of tax sale was issued to the Williams County Auditor. On September 14, 1942, the tax sale certificate was assigned to John Fehrman, August Noss, and Earl Ferguson. An Auditor's Tax Deed was issued to the same parties on February 7, 1949.

John Fehrman, representing the heirs of Gustav Noss, paid the real estate taxes on the property for the years 1942 through 1967, and also rented the land to Henry Rud on a crop share basis from 1940 to 1968. Rud had rented the land from Gustav Noss in 1938 and 1939. In 1967, August Noss, John Fehrman, Earl Ferguson, and Laurence Smitton joined in a deed that divided the land equally among themselves. The four sold the land in 1968, reserving to themselves, however, all mineral rights.

In 1959, Amerada Petroleum Corporation secured a producing oil and gas well on the premises. Since that time, the proceeds of the two and one-half percent royalty interest has been accumulated by Amerada. In December, 1975, Amerada began depositing the proceeds with the clerk of Williams County District Court.

The descendants of Gustav Noss initiated a quiet title action in district court on December 22, 1975, claiming the royalty interest and the accumulated proceeds by virtue of the 1949 Auditor's Tax Deed. The as-

signees of Jacobson answered, claiming their respective interests in the two and one-half percent royalty interest by virtue of assignments from Jacobson. The district court held that the descendants had in effect redeemed the property by their payment of the delinquent taxes and were bound by the warranty in their father's conveyance of the royalty interest.

The Noss descendants appeal from the district court's decision to this court. We shall hereinafter refer to the plaintiffs as the Descendants and the defendants as the Assignees.

The Descendants argue that they acquired an independent title to the property through their 1949 tax deed that is paramount to the royalty interests. In support of their argument that they acquired title free and clear of the royalty conveyance, they point out that the district court found that Chapter 57–27, NDRC (1943) ["Rights of Private Purchaser When Land Not Redeemed"] applied, and assert that this chapter does not deal with redemptions. Furthermore, Descendants submit that the 1949 Auditor's Tax Deed expressly provided that no redemption had occurred. The tax deed provides in pertinent part:

"And it appearing that

John Fehrman, August Noss and Earl Ferguson are the legal owner of the said certificate of tax sale and the time allowed by law for redeeming the land herein described having now expired and proof of legal notice of the expiration of the period of redemption having been filed in the office of the county auditor prior to the maturity of such certificate as provided by law,

and said land not having been redeemed from such sale pursuant to law, and the said John Fehrman, August Noss and Earl Ferguson, having demanded a deed for the tract of land mentioned in said certificate; and it appearing that said lands were legally liable *tor* [sic] taxation, and had been assessed and properly charged on the tax book or duplicate for the year 1937, and that said lands had been legally advertised for taxes and

were sold on the 13th day of December, 1938, as aforesaid,

\* \* \* \* \* \*

WITNESSETH, That the said party of the first part, for and in consideration of the premises, and the sum paid, has granted, bargained and sold and by these presents does grant, bargain, sell and convey unto the said party of the second part, their heirs or assigns, forever, the tract or parcel of land mentioned in said certificate,"

Descendants also contend that other provisions of the 1943 Revised Code could have been used if anything other than an independent title was intended. For example, Chapter 57–26, NDRC (1943), provides for "Redemption From Real Estate Tax Sales," and Section 57–2819, NDRC (1943), provides for "Rights of Former Owner to Repurchase."

Descendants argue that the district court's holding is to the effect that "heirs of a former owner could only redeem, since they are legally barred from acquiring greater rights to his property than the former owner." They contend that we held differently in *Hefty v. Aldrich*, 220 N.W.2d 840 (N.D.1974).

*Hefty* was an action to quiet title in which the plaintiff, daughter of the former record owner, received a title through a quitclaim deed from the county in 1970. The county had acquired title through a tax deed to the property in 1968 for nonpayment of taxes. The defendant, Credit Bureau, contended, among other things, that it was a lienholder by virtue of a judgment obtained prior to the issuance of the tax deed to the county, and that the plaintiff/daughter was a trustee for its benefit because she owed a duty to pay taxes and therefore could not purchase the property free and clear of the judgment lien. We held that the daughter acquired the property free and clear of the judgment because

she "was under no obligation to pay the taxes on the property, and she was not attempting by the purchase to strengthen her title."

Descendants are apparently citing *Hefty* for the proposition that an heir of a former record holder may acquire an independent title to the property and is not limited to redemption. Descendants also submit that pursuant to the "relation-back" theory of *Conlin v. Metzger*, 77 N.D. 620, 44 N.W.2d 617 (1950), taxes assessed on the assessment date of April 1, 1937, were for the entire estate and thus were prior to the royalty assignment of Noss to Jacobson on September 25, 1937. Because of this, they argue that their title is paramount to the royalty assignment. See *Pederson v. Federal Land Bank of St. Paul*, 72 N.W.2d 227, 231 (N.D. 1955); Section 57–28–09, N.D.C.C.

Descendants also argue that they are not estopped by their father's warranty of title because they purchased an independent tax title.[1] Descendants cite *Aure v. Mackoff*, 93 N.W.2d 807 (N.D.1958), for the proposition that a grantor will be estopped by his warranty, but they argue that *Aure* goes no further and does not extend to the grantor's heirs.

In *Aure*, husband and wife conveyed a royalty interest to a third party that contained a warranty of title identical to the one in the present case. At the time the royalty interest was conveyed, the land was subject to a mortgage in favor of the state. The state subsequently foreclosed its mortgage and received a sheriff's deed to the property. The owners of record of the royalty interests were included in the proceeding. The land was reacquired by the husband under a contract for deed and ultimately inherited by the wife. She fulfilled the contract and the state issued her a quitclaim deed to the property.

The wife brought suit on the grounds that the royalty interests had been termi-

---

1. Although we have recognized that a valid tax deed clothes the grantee with a new and complete title under an independent grant from the sovereign authority of the state, we have also acknowledged that this principle of law "does not preclude the application of equitable principles or prevent the doctrine of estoppel from operating." *Northwestern Mut. Savings & Loan Ass'n v. Hanson*, 72 N.D. 629, 10 N.W.2d 599, 601 (1943).

nated by the state's foreclosure of its mortgage. The assignees argued that the wife was estopped from contending that the foreclosure extinguished their royalty interest. The court found for the assignees.

In the instant case, the descendants contend that *Aure* is based upon the fact that the wife joined in the original assignment of royalty and is not based upon the fact that she was the successor to her husband's estate.

Descendants also submit that *Hefty v. Aldrich, supra*, supports the proposition that no estoppel exists in this case because the children of the royalty assignor did not rely on their father's title, but purchased an independent tax title.

Assignees argue that the descendants "did not at any time enjoy independent title to the property, but rather pursuant to the issuance of the Auditor's Tax Deed in 1949, merely redeemed property of which they were the owners since the death of Gustav Noss." Furthermore, the assignees argue that John Fehrman, one of the sons and heirs-at-law of Gustav Noss, was the administrator of the estate of his father and had a duty to pay the taxes. Thus, assignees argue that *Hefty* does not apply. They say:

"What appellants fail to articulate however, is that unlike the position of the heirs-at-law of Gustav Noss, the decision in *Hefty* does not reveal whether the plaintiff received the property in question by intestacy, nor whether she was the administrator of the record holder's estate. Thus, in the absence of either of the above two factors, the plaintiff was not, as the court indicated and as were the appellants and their testator [sic] (John Fehrman), under a legal or moral obligation to pay the taxes owed. The plaintiff in *Hefty* acquired an independent title through the tax foreclosure as a *stranger* to the title. *Hefty v. Aldrich* does not apply to the instant case."

The crux of the argument of the assignees, however, is estoppel, *i. e.* the title to the real property vested immediately in the heirs·of August Noss (descendants herein) on his death, and as the intestate heirs of

the warrantor in the conveyance of royalty, they were in privity with their father and are estopped from denying the validity of the warranty of title. Assignees contend that their theory of estoppel is supported by *Aure v. Mackoff, supra*. They argue that the principles of estoppel applied in *Aure* against the wife because she was the successor to her husband's estate and that her participation in the conveyance merely strengthened the court's view. We agree. Although the court in *Aure* noted the wife's "dual capacity", *i. e.* as successor and original party to the warranty, the decision does not require that the dual capacity exist in order that the doctrine of estoppel apply:

"Under the principle of estoppel arising from the warranty of title in his [husband's] assignment . . . , the title acquired pursuant to that contract by his successor, the plaintiff herein [wife], inures to the benefit of . . . [the assignees] to the extent of the title acquired to the property conveyed by the royalty assignment. *The correctness of our determination in this respect is strengthened* by the fact that the plaintiff [wife] in addition to being the successor to the title of . . . [the husband] is an original party to the warranty that is the basis of the estoppel." *Aure v. Mackoff*, 93 N.W.2d at 812. [Emphasis added.]

Even if the doctrine of estoppel was applied against the wife in *Aure* because she was successor to her husband's estate, descendants would apparently argue that this principle of privity applies only if the heirs claim through their ancestor's estate, and not if the heirs purchase and rely upon an independent title. Descendants contend that because there was no probate of the Gustav Noss estate in North Dakota, they relied upon their tax title "rather than upon title by inheritance from their father."

We do not believe, however, that the lack of probate of the Gustav Noss estate in North Dakota destroyed the descendants' privity with their father. Under settled principles of law, real property in an intestate's estate pass immediately to the

heirs upon the intestate's death. 1913 Compiled Laws of North Dakota, Section 5742; *Aberle v. Merkel*, 70 N.D. 89, 93, 291 N.W. 913, 915 (1940).

Although acknowledging the control of the county court for purposes of administration, this court held in *Aberle* that "in reality it [property] passes at once to the heirs, without any appointment of an administrator." *Aberle v. Merkel*, 70 N.D. at 93, 291 N.W. at 915. *See also, Brooks v. Bogart*, 231 N.W.2d 746, 752 (N.D.1975); *Belakjon v. Hilstad*, 76 N.D. 298, 304, 35 N.W.2d 637, 641 (1949). Furthermore, the actions of John Fehrman in this case are consistent with a finding that the property passed to the heirs immediately upon their father's death. After Gustav Noss died in 1939, John Fehrman rented the land in question in 1940 and 1941 to a third party. This was before the tax certificate was assigned (1942) and the tax deed was issued (1949). During oral argument, counsel for the descendants conceded that the descendants acted as heirs before 1942 and acted independently after 1942.

We feel that the decision in *Hefty v. Aldridge, supra*, is distinguishable on the facts from this case. In Syllabus ¶ 5, we read:

"A person who acquires property for the first time by purchasing a tax-deed interest and who, prior to purchase of the tax-deed interest, had no obligation to pay taxes on the land purchased, cannot be said to have strengthened his title thereby so as to equitably require the imposition of a trust relationship for the benefit of another." *Hefty v. Aldridge*, 220 N.W.2d at 842.

In this case, the descendants did not acquire the property for the first time by their purchase of the tax deed. As noted earlier, the real property passed immediately to the heirs at their father's death and the descendants received rent from the land prior to their receipt of the tax certificate.

We hold that the descendants are estopped by their father's warranty to Jacobson and his assigns in 1937. *See also* Section 47–10–12, N.D.C.C. (identical language in the 1913 Compiled Laws of North Dakota, § 5526) which reads: "[T]he heirs and devisees of any person who has made any covenant or agreement in reference to the title of, in, or to any real property are answerable upon such covenant or agreement to the extent of the land descended or devised to them in the cases and in the manner prescribed by law."

Descendants also argue, however, that "at the very least, their independent tax title should be recognized as 'color of title' which would bar the royalty assignment after ten years of possession and payment of taxes." This adverse possession argument is premised on Section 47–06–03, N.D.C.C.:

"A title to real property, vested in any person who has been or hereafter shall be, either alone or including those under whom he claims, in the actual open adverse and undisputed possession of the land under such title for a period of ten years and who, either alone or including those under whom he claims, shall have paid all taxes and assessments legally levied thereon, shall be valid in law. Possession by a county under tax deed shall not be deemed adverse. A contract for deed shall constitute color of title within the meaning of this section from and after the execution of such contract."

In *Bilby v. Wire*, 77 N.W.2d 882, 889 (N.D.1956), this court held that "where the surface and mineral estates have been severed, possession of the surface by its owner cannot be adverse to the owner of the minerals." *See also: Wisness v. Paniman*, 120 N.W.2d 594 (N.D.1963); *Yttredahl v. Federal Farm Mortgage Corp.*, 104 N.W.2d 705 (N.D.1960).

In *Payne v. A. M. Fruh Company*, 98 N.W.2d 27 (N.D.1959), however, this court distinguished *Bilby v. Wire* and held that if a royalty interest was severed after a tax lien had attached, an invalid tax deed was color of title of the entire estate for purposes of adverse possession:

"We have held that the severance of a mineral interest from the surface estate

creates two estates which are as distinct as if they constituted two different parcels of land. [Citations omitted.] That holding is unquestionably correct as between parties who are privy to the chain of title and as to a county when the severance occurs at a time when the severed interest is free of any tax lien. *Bilby v. Wire*, N.D., 77 N.W.2d 882. Where, however, a mineral interest is severed from the surface at a time when the whole interest in the land is subject to the county's lien for taxes, there is no severance as to the county. The county's lien remains a single lien upon the entire estate in the land and its title founded upon such lien is a new and paramount title from which no minerals have ever been severed.

"In considering the extent of adverse possession under such a title or presumptive title it is erroneous to consider the possession as being that of the surface estate or of the mineral estate or of both of such estates. Such a title is unitary, it is title to a single estate which comprises every possible interest in the land and possession under such title or presumptive title is unitary in the same manner as if the former chain of title had not shown any separation of estates or interests as between the parties privy to it. [Citations omitted.]

"The rule that the possession of the surface of the land does not constitute possession of a severed mineral interest is not applicable here because there has never been a separation of any interest of any kind from the title under consideration." 98 N.W.2d at 31–32.

Assignees argue that *Payne* is distinguishable on its facts and should not be controlling here. They argue that in *Payne* the grantee of the tax deed was a stranger to the title, *i. e.*, the grantee did not acquire title as a descendant of the owner of the property in question. They argue that the

principles of estoppel apply. We agree. *See Skelly Oil Company v. A. M. Fruh Company*, 137 N.W.2d 664 (N.D.1965).

The judgment of the district court is affirmed.

VANDE WALLE, PAULSON and SAND, JJ., concur.

PEDERSON, Justice, concurring specially.

Even though I agree that Chief Justice Erickstad has adequately described the pertinent events and occurrences and has correctly applied the law and precedent thereto, I find myself concurring reluctantly because the appearance of fairness is somehow lacking.

One of the teaching tools used by the late, great Dean Thormodsgard in explaining real property rights at the University of North Dakota Law School was "the bundle of sticks" theory.[1] Apparently minerals can, in theory, be "severed" from the surface merely by becoming owned by one who does not own the land surface. *Bilby v. Wire*, 77 N.W.2d 882 (N.D.1956). At least in theory then, the tax assessor should assess the surface separately from the minerals.[2] See §§ 57–02–24 and 57–02–25, NDCC, which require assessment of minerals. There is some doubt that assessors do any such thing in real life.

Also, in theory, one man should not have to pay another's tax, unless it is true that we are surely our brother's keeper, or there is an obligation upon surface landowners arising out of something labeled a "relation-back" theory. I think that the majority opinion misapprehends *Conlin v. Metzger*, 77 N.D. 620, 44 N.W.2d 617 (1950); however, it has no bearing upon the results in this case.

In a 1974 article labeled "Severed Mineral Interests," Ernest R. Fleck wrote in 51 N.D. L.Rev. 369:

1. The Wisconsin Supreme Court recently indicated that "bundle of sticks" is a legal philosophy. *Wisconsin Tel. Co. v. City of Milwaukee*, 271 N.W.2d 362, 367 (Wis.1978). See other

definitions of terms in *Sox v. Miracle*, 35 N.D. 458, 160 N.W. 716 (1916).

2. See 4 Summers, Oil and Gas, § 781 et seq., Taxation.

"The severance of the mineral estate from the surface estate in land has caused some problems, litigation and legislation over the years, but these were minimized by general acceptance of *the doctrine of mineral estate dominance.* Today, however, there appears to be an erosion of this concept and an increased concern for the rights of the surface owner." [Emphasis supplied.]

Apparently Mr. Fleck's use of the term "dominance" of the mineral estate over the surface estate had nothing to do with paying taxes but only described the relationship between surface ownership and mineral ownership insofar as it related to the easement of necessity required for access. The dominant estate is one which, of necessity, depends upon another estate, a servient estate, for enjoyment. See Words and Phrases, "Dominant Estate or Tenement" and "Tenement."

I am not prepared to suggest a solution, but the dominant estate doctrine should not favor a mineral owner over a surface owner with regard to payment of taxes. In this respect, they ought to be equal to each other and to each of the other parts of the "bundle of sticks."

. Justice Sand wrote in *Reiss v. Rummel,* 232 N.W.2d 40, 43 (N.D.1975), that mineral owners often are entrepreneurs actively soliciting and canvassing farmers to sell or lease oil and gas rights in their lands which were primarily used for agricultural purposes. We shouldn't be applying equity rules to burden the farmer with obligations that solely benefit entrepreneurs if the result is unfair. Rules of equity should be tools to reach justice and fairness—not to avoid fairness. That is what we tried to say in *Farmers Cooperative Ass'n of Churchs Ferry v. Cole,* 239 N.W.2d 808, 814 (N.D.1976), and as this court said in *Baker v. Minot Public School Dist. No. 1,* 253 N.W.2d 444, 451 (N.D.1977):

"A lack of precedent is no obstacle to equitable relief which may be appropriate in a particular factual setting."

If we must, in this case, protect the interests of the entrepreneurs, maybe we should treat the Noss descendants and the Jacobson assignees as owning not "severed" property, but as cotenants with an "interest in common." See § 47–02–08, NDCC. Thus, at least, the Jacobson assignees would be obligated to participate in the costs of redemption under Chapter 28–24, NDCC.

If the law of equity doesn't permit us to do equity, we should suggest some legislative attention.